[No. D001863. Fourth Dist., Div. One. Nov. 5, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MATHIS et al., Defendants and Appellants.

## COUNSEL

Douglas W. Grinnell and David B. Florance, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Keith I. Motley and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—James Mathis (Mathis) and Neoka Tate (Tate) appeal their respective judgments of conviction, Mathis for pandering (Pen. Code, § 266i)[1] and pimping (§ 266h) and Tate for pandering and aiding and abetting an act of prostitution (§ 647, subd. (b)), on grounds of instructional and evidentiary error. They also appeal their respective sentences. We reverse their pandering convictions and affirm as to the remaining conviction.

### FACTUAL BACKGROUND

Fourteen-year-old Donajean R. (Dusty) ran away from home and hitchhiked to California with two other teenage girls. Alone and on the streets of San Diego, she met James Mathis. Mathis introduced himself and asked her name and age. Although earlier she had beer and cognac, she remembered telling him her name was Dusty and she was 14.

Dusty went with Mathis to his room at the Fabulous Inn where she met Tate and spent the night in the room Mathis and Tate shared. The next morning, as Mathis moved in and out of the room, she questioned Tate about what it was like to be a prostitute. When Mathis asked Tate if she liked being a hooker, Tate replied that she liked the money.

Later, Mathis offered to buy Dusty a bus ticket home. Dusty refused his offer and asked if she stayed with Mathis and Tate whether she had to be a

---

[1] All statutory references are to the Penal Code unless otherwise specified.

prostitute. Mathis replied she would have to bring in some money. Dusty decided to stay.

Mathis and Tate instructed Dusty to charge $40 for straight sex and $25 for oral sex. They told her that after she became experienced she could keep some of the money she made. Mathis arranged a false name and age for Dusty and told her to give the money she earned to Tate or to him if she saw him. Tate fitted Dusty with clothes and makeup. Mathis remarked "There's my little whore" and advised her to put more perfume on. When Dusty and Tate left, Mathis told her he would be out to check on her.

That night, Tate, Dusty and a third woman went to El Cajon Boulevard, and Tate showed Dusty how to arrange for "dates" and avoid undercover officers. Dusty turned about five tricks each of which provided $40 or $50 which Dusty gave to Tate. When they returned to the motel room, Tate either put the money in a jar in the room or gave it to Mathis. The next night Dusty and Tate went out again. Dusty turned another five tricks. She saw Mathis on the street and gave him $40, but gave the rest of the money she earned to Tate.

The next day, Mathis and Dusty went shopping. Mathis bought Dusty a pair of shoes and stockings. That night, when Tate and Dusty went out to Rosecrans Boulevard, they were interviewed by police. The officers' discovery that Dusty's age and date of birth did not coincide eventually led to the arrest of Mathis and Tate.

## Discussion

Certain of the issues raised by Mathis and Tate on appeal are common to both appeals. As a matter of convenience, we discuss and resolve the common issues first.

### I

The information charged both Mathis and Tate in the language of section 266i, subdivision (b):[2] "Between February 25, 1984, and February 29, 1984, [name] did procure another person, [Dusty], for the purpose of prostitution, and by promises, and device and scheme, *caused, induced,* and *persuaded,* and *encouraged* such person to become a prostitute, in violation of Penal Code section 266i." (Italics added.)

---

[2]Section 266i, subdivision (b) reads: "Any person who:. . . (b) by promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages another person to become a prostitute; . . . is guilty of pandering, a felony, . . ."

At trial the following instruction was given: "As used in these instructions, the term 'procure' implies the use of persuasion, solicitation, encouragement, *or assistance;* and it follows that the defendants may be found or defendant may be found guilty of such procurement if it is shown beyond a reasonable doubt that he or she intentionally *either assisted,* induced, persuaded, or encouraged another person to become a prostitute." (Italics added.) ▆▆▆ Both Mathis and Tate object to a jury instruction defining "procuring" to include mere assistance. Mathis argues that since the word does not appear in the statute and since it is possible to assist a person in an activity without encouraging the activity, the instruction prejudiced the jury's assessment of his guilt. Tate objects to the instruction on due process grounds. She argues the absence of the word assistance in the statute effectively deprived her of notice of the charges against her until the time of trial. She also argues the use of the word "assist" in the jury instruction given allowed the jury to equate a violation of section 266i with aiding and abetting an act of prostitution in violation of section 647, subdivision (b). She bases this argument on the congruence in language between the jury instruction defining procure for section 266i purposes and the jury instruction defining aiding and abetting for aiding and abetting in an act of prostitution purposes (§ 647, subd. (b).)[3] The trial court's rationale in giving the instruction was case law interpreting the language of section 266i to include assistance within the meaning of encouragement. (See *People* v. *Hashimoto* (1976) 54 Cal.App.3d 862, 865-866 [126 Cal.Rptr. 848]; *People* v. *Osuna* (1967) 251 Cal.App.2d 528, 533 [59 Cal.Rptr. 559].[4])

We agree with Tate that having received these instructions on these facts, the jury could not have found her guilty of aiding and abetting an act of prostitution without also finding her guilty of pandering and vice-versa. We also think it unlikely the Legislature intended to create two functionally coterminous crimes, one a misdemeanor, the other a felony punishable by up to eight years in state prison.[5]

As we read the language of section 266i, subdivision (b), there is a critical distinction between pandering and aiding and abetting an act of prostitution.

---

[3]The court gave the following aiding and abetting instruction: "A person aids and abets the commission of a crime when he, one, acting with knowledge of the unlawful purpose of the perpetrator and, two, with the intent of—or purpose of committing, encouraging, or facilitating the commission of the offense, three, by act or device *aids, promotes, encourages,* or *instigates* the commission of the crime."

[4]*Hashimoto* involved a travel agency owner who augmented the services his agency provided by arranging for the availability of prostitutes for his customers at prearranged rates. He attempted to set up an arrangement of this sort with an undercover officer and was convicted of pandering. *Osuna* involved a defendant who assisted prostitutes by driving them to their place of business. He was also convicted of pandering.

[5]Pandering is punishable by imprisonment in the state prison for three, four or six years unless the person pandered is under sixteen, in which case a term of three, six or eight years is imposed. (See § 266i.)

■ Section 266i, subdivision (b) has two elements. It requires the defendant to cause, induce, persuade or encourage another person to become a prostitute; and the causing, inducing, encouraging or persuading must be accomplished *by* promises, threats, violence or any device or scheme. Implicit in the necessity of both of these elements of the crime is the inference of a specific intent to influence a person to become a prostitute.[6] ■ While evidence of such a mental state is likely to be circumstantial and, in a given case, the intent to influence may well be inferred from acts of assistance, "we cannot extrapolate therefrom, as a matter of law, that the inference *must* be drawn. Intent [to influence] is what must be *proved* . . . ." (Cf. *People* v. *Yarber* (1979) 90 Cal.App.3d 895, 916 [153 Cal.Rptr. 875].)

■ We are satisfied the evidence is sufficient to convict both Mathis and Tate of pandering. But had the jury interpreted Dusty's testimony to indicate she decided to become a prostitute independently of Mathis' and Tate's actions, and that Mathis and Tate only helped her begin her new career rather than affirmatively influencing her decision to become a prostitute, the jury could have convicted either or both of them of aiding and abetting an act of prostitution rather than pandering. ■ ■ ■ For this reason, we are compelled to reverse and remand for retrial of the pandering charges.[7]

## II

Because the issues may arise on retrial, we address two of defendants' remaining contentions.

## A

At trial, the following colloquy occurred between the prosecutor and Dusty:

[6]On the facts of this case, the statutory language regarding encouragement "to become a prostitute" poses no difficulty since it was not disputed that Dusty had not engaged in acts of prostitution prior to her meeting Tate and Mathis. We recognize that other cases have applied the pandering statute to situations in which the defendant's acts related to an individual previously a prostitute who continued to engage in acts of prostitution. (See, e.g., *People* v. *Osuna, supra,* 251 Cal.App.2d 528.) We have no occasions in the present case to comment on the application of section 266i to that arguably different situation.

[7]Both Mathis and Tate argue the applicability of section 654 to their respective multiple convictions. Since as to each defendant we are reversing one of two convictions, it could be premature to comment on the double punishment concern. As to Tate, however, we do note that given our narrowed interpretation of section 266i as requiring a specific intent to influence, a violation of section 647, subdivision (b) on an aiding and abetting theory can no longer be considered a lesser included offense of pandering. Thus, Tate's conviction on the section 647, subdivision (b) charge does not preclude her retrial on the pandering charge.

"Q: Did she [Tate] make any comments about her relationship with James [Mathis]?

"A: Yes, sir. I had asked her 'Is it true that prostitutes get beat up' and she said 'Well, James doesn't beat up his ladies or treat them bad.'

"Q: Did she make any other comments about James that you recall during that part of the conversation?

"A: She just said he was a nice man to work with or for." ■ Mathis' counsel objected to this evidence on grounds it is hearsay as to Mathis, and the court gave a corresponding limiting instruction. At the conclusion of the government's case, however, the prosecutor requested the limiting instruction be withdrawn because the colloquy came within the conspiracy exception to the hearsay rule under Evidence Code 1223. The court granted the prosecutor's request over Mathis' objection. Mathis argues the court erred in withdrawing the instruction because the prosecutor failed to establish even a prima facie case of conspiracy.

We are unable to determine whether Mathis objects to the introduction of this evidence as against his pandering conviction, his pimping conviction, or both. In any case, his argument fails. As we read the transcript, the evidence was not offered to establish that Mathis didn't beat his prostitutes or to establish his character as an employer. Thus, the evidence is not hearsay and the trial court did not err in admitting the testimony but merely in stating the correct grounds for its admission.

B

■ Tate argues the court erred in failing to instruct the jury on section 272, contributing to the delinquency of a minor, as a lesser included offense (LIO) of pandering. While contributing to delinquency is not an LIO of pandering in the abstract—the pandered prostitute need not be a minor—the information in this case alleged Dusty's age with respect to both the sections 266h and 266i charges. It is well established that a crime is a lesser included offense of another if "the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." (*People* v. *Geiger* (1984) 35 Cal.3d 510, 517, fn. 4 [199 Cal.Rptr. 45, 674 P.2d 1303].) If the evidence on retrial would justify a conviction on the lesser offense of contributing to delinquency but not on the greater offense of pandering, both Tate and Mathis would be entitled to such an instruction. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-325 [185 Cal.Rptr. 436, 650 P.2d 311].)

## DISPOSITION

The judgments of conviction on charges of violating section 266i as to both defendants are reversed. In all other respects, the judgments are affirmed.

Staniforth, Acting P. J., and Butler, J., concurred.