Filed 6/2/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S173490 |
| v. | ) | |
| | ) | Ct.App. 2/5 B207812 |
| | ) | |
| JOMO ZAMBIA, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. LA055997 |
| _____ | ) | |

Defendant Jomo Zambia was convicted of pandering in violation of Penal Code section 266i, subdivision (a)(2),[1] which defines pandering as encouraging "another person to become" a prostitute.[2]  Here, the target of defendant's

---

[1]     All further statutory references are to the Penal Code.

[2]     The full text of section 266i follows:

"(a)  Except as provided in subdivision (b), any person who does any of the following is guilty of pandering, a felony, and shall be punishable by imprisonment in the state prison for three, four, or six years:

"(1)  Procures another person for the purpose of prostitution.

"(2)  By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute.

"(3)  Procures for another person a place as an inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state.

"(4)  By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages an inmate of a house of prostitution, or any

*(footnote continued on next page)*

1

encouragement was an undercover police officer. He contends that section 266i, subdivision (a)(2) does not apply when the target is already a prostitute or an undercover police officer acting as one. The trial and appellate court rejected this argument. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2007, Officer Erika Cruz was working undercover as a street prostitute in Los Angeles. Defendant drove past her, looked in her direction, made a U-turn, and stopped about 15 feet across the street from her. Defendant lowered his window and told Cruz to get into his truck. When Cruz asked why, defendant said he was a pimp. The officer told him to back up so they could talk. As he did

---

*(footnote continued from previous page)*

other place in which prostitution is encouraged or allowed, to remain therein as an inmate.

"(5) By fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution.

"(6) Receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution.

"(b) Any person who does any of the acts described in subdivision (a) with another person who is a minor is guilty of pandering, a felony, and shall be punishable as follows:

"(1) If the other person is a minor 16 years of age or older, the offense is punishable by imprisonment in the state prison for three, four, or six years.

"(2) If the other person is under 16 years of age, the offense is punishable by imprisonment in the state prison for three, six, or eight years."

2

so, Cruz called Officer Paschal, her "security officer" to report that she was possibly "working a pimp."

Standing by the defendant's open passenger-side window, Officer Cruz saw cell phones on the truck's center console. Defendant again told her to get in the truck, repeating that he was a pimp. Cruz asked what defendant meant. He said that he would "take care of [her]" and asked how much money she had in her possession. Hearing that she had $400, defendant said if she gave the money to him, he would provide her with housing and clothing.

Officer Cruz hesitated, telling defendant she was not comfortable. Defendant told her he was a legitimate businessman, showed her a business card, and said he would not "strong-arm" her, which Cruz understood to mean to take her money by force. Cruz testified that defendant used an aggressive tone of voice and demeanor. She characterized him as acting like a "gorilla pimp," or one who uses "verbal threats and violence to get their way and to scare prostitutes into working for them." Cruz asked defendant if she could continue to work the same neighborhood. Defendant told her she could and that he would "just take care of [her]."

At this point, Officer Cruz alerted her backup unit. Defendant was arrested and charged with one count of pandering. (§ 266i, subd. (a)(2).)

In addition to Officer Cruz's testimony summarized above, Officer Paschal testified that pimps commonly provide condoms to their prostitutes, and use multiple cell phones to contact them. When she arrested defendant, Paschal found cell phones, condoms, and a business card on the truck's console. Paschal testified that pimps often give their prostitutes a business card with a phone number to

3

facilitate contact.[3]  Paschal also explained that pimps often have prostitutes work on the street to solicit sex acts for money.  The prostitutes turn their money over to the pimp, who provides food, clothing, and other services.

Defendant did not testify.  His mother testified that he lived at her home and worked in her family-owned janitorial business.  Defendant would usually work between 6:00 p.m. and 12:30 a.m.  He carried one working mobile phone, but also had a broken one in his car, along with a third that he had borrowed from a friend.  She explained that defendant was clumsy and often broke his phones.  She recognized two of the three phones found in defendant's vehicle as well as defendant's business card from the family business.

Defendant's fiancée testified that his work hours varied, but that he would often return to his jobsite to pick up equipment in the early morning.  She recognized the three cell phones found in defendant's truck, and had no reason to believe defendant was a pimp.

Defendant was convicted by jury and sentenced to four years in prison.  The Court of Appeal affirmed.

## DISCUSSION

At issue here is the proper construction of section 266i, subdivision (a)(2), which provides in pertinent part that any person who "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute" is guilty of pandering.

---

[3]  Sergeant Alan Kreitzman, who was in charge of the investigation, testified that pimps carry business cards and show them to prospective prostitutes to give the appearance of legitimacy.

4

"In construing any statute, we first look to its language.  [Citation.]  'Words used in a statute . . . should be given the meaning they bear in ordinary use.  [Citations.]  If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .'  [Citation.]  'If the language permits more than one reasonable interpretation, however, the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part."  [Citation.]'  [Citation.]"  (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379.)  A statute " 'must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.' "  (*City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847, 858, quoting *DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 18.) " 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.' "  (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659.)

Defendant argues that section 266i, subdivision (a)(2)'s phrase "to become a prostitute" does not include encouraging a person who is already a prostitute, or is posing as one.  The People argue that the better view is that "to become a prostitute" means to "engage in any future acts of prostitution," regardless of the victim's status at the time of a defendant's encouragement.

With a single exception, an unbroken line of cases, beginning with *People v. Bradshaw* (1973) 31 Cal.App.3d 421 (*Bradshaw*), has rejected defendant's

5

argument. In *Bradshaw*, the defendant tried to persuade an undercover police officer to work in a house of prostitution under his supervision. The defendant was charged under section 266i with "procuring, causing, inducing, persuading and encouraging" the victim to become a prostitute.[4] (*Bradshaw,* at p. 423.) At trial, the prosecution contended that while the defendant did not successfully cause the officer "to become a prostitute," he *encouraged* her to do so and thus violated former subdivision (b) (now subd. (a)(2)) of section 266i. (*Bradshaw,* at p. 424.) The court held that former subdivision (b) includes "cases where a defendant has solicited one whom he believes to be a former prostitute to re-enter the profession and a defendant who solicits one whom he believes presently to be a prostitute to change her business relations." (*Bradshaw,* at p. 426.) Accordingly, *Bradshaw* stands for the proposition that a defendant can be convicted of pandering even if the target is already a prostitute, or a person posing as one, if the defendant encourages the target to change "business relations." (*Ibid.*)[5]

Our courts have repeatedly followed *Bradshaw* and have concluded that the phrase "to become a prostitute" includes both recruiting someone to enter the prostitution trade for the first time and encouraging an existing prostitute, or an undercover officer, to work for him or someone else under some type of new business relationship. (See *People v. Hashimoto* (1976) 54 Cal.App.3d 862, 865-

---

[4]     The court specifically noted that the defendant was not charged under the pandering statutes as they applied to houses of prostitution. (*Bradshaw*, *supra*, 31 Cal.App.3d at p. 423, fn. 3.)

[5]     Bradshaw also argued that "encourage" implied success and that "to become" necessarily means that the victim could not have been a prostitute before defendant's persuasive activities. (*Bradshaw*, *supra*, 31 Cal.App.3d at p. 424.) The court held that "success is not a necessary element of the offense proscribed by the word 'encourage' as used in subdivision (b) of section 266i." (*Id.* at p. 425.)

866 (*Hashimoto*); *People v. Patton* (1976) 63 Cal.App.3d 211, 218 (*Patton*); *People v. DeLoach* (1989) 207 Cal.App.3d 323, 333 (*DeLoach*).)

Courts have noted the purpose of the pandering statute in reaching this outcome.  In *Hashimoto*, *supra*, 54 Cal.App.3d 862, the defendant ran a travel agency catering to foreign tourists.  An undercover officer spoke with the defendant saying she had "been informed that he was hiring girls to work for him." (*Id.* at p. 865.)  The defendant said he would refer to the officer those clients of his who were seeking the services of a prostitute.  Told that the officer charged $75 per client, the defendant negotiated a reduced rate of $50 for his referrals, urging that the volume of customers he supplied would offset the discounted price.  (*Ibid.*)  In affirming the defendant's pandering conviction, the court noted, "The purpose of the anti-pandering statute [citation] is to 'cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned.' [Citations.]" (*Id.* at p. 866.)  It concluded that the Legislature not only wanted to stop the launching of a new prostitute's career but also to prevent prostitution "by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation, or increasing the supply of available prostitutes. [Citations.]" (*Id.* at p. 867; see also *People v. Montgomery* (1941) 47 Cal.App.2d 1, 24, disapproved on other grounds in *Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 301, fn. 11.)  This analysis recognizes that when a pimp offers protection and support to a prostitute in return for some or all of her income, the offer increases the likelihood that the prostitute will be able to maintain or expand her activities, an outcome squarely at odds with the statutory goal.

In *Patton*, *supra*, 63 Cal.App.3d 211, the defendant encouraged a teenage runaway, who had been working as a prostitute, to come work for him.  He offered

7

her housing, bail money when needed, and other inducements. Convicted of pandering, the defendant raised the very question involved here, arguing: "[A] woman cannot become a prostitute if she already is one . . . ." (*Id.* at p. 215.) While he acknowledged that *Bradshaw* and *Hashimoto* stood against him, the defendant relied on out-of-state cases and "sound considerations of public policy." (*Patton,* at p. 217.) He urged solicitation of a "virtuous woman" was more blameworthy than the encouragement of an established prostitute who would "generally have been coarsened by previous acts of prostitution." (*Id.* at pp. 217-218.)

The *Patton* court rejected the defendant's claim, noting, "The fallacy involved in this reasoning is the assumption that the Legislature was concerned only with actual, rather than potential, harm." (*Patton*, *supra*, 63 Cal.App.3d at p. 218.) Thus, the focus is not on the character of a defendant's target, but on the social harm inherent in the defendant's conduct. The *Patton* court agreed with *Bradshaw* and *Hashimoto*, noting, "A substantial potential for social harm is revealed even by the act of encouraging an established prostitute to alter her business relations. Such conduct indicates a present willingness to actively promote the social evil of prostitution." (*Patton,* at p. 218.)

*DeLoach*, *supra*, 207 Cal.App.3d 323, shows how defendant's theory here could be used to subvert the goal of the statute, and insulate predatory behavior from punishment. Barbara DeLoach had been repeatedly incarcerated for various felonies, including armed robbery. Paroled from her most recent imprisonment, she returned to live with her two daughters, ages 10 and 14, supplementing her welfare income by prostitution. To avoid police suspicion, she often took her older child, S., with her while she plied her trade. One night, a potential customer asked for an interlude with S., rather than with DeLoach. DeLoach urged her

daughter to accept the solicitation, but S. refused. A few days later, they encountered the same man and DeLoach threatened to beat S. if she did not go with him. The man engaged in multiple sex acts with S. and gave her $70, which DeLoach demanded when S. was returned by the customer. Several weeks later, DeLoach turned S. over to the same man, who again paid her for a sexual encounter. (*Id.* at pp. 331-332.) DeLoach was charged with multiple crimes, including two counts of pandering. She was convicted on both counts. On appeal, she conceded guilt of the first offense. Challenging the other count, however, she argued that she could not be convicted of pandering on the second occasion because she had already made S. a prostitute. Thus, because S. was already a prostitute, DeLoach argued she could not be convicted of causing her to become one during the second incident. (*Ibid.*)

The Court of Appeal correctly rejected DeLoach's argument that, because she had coerced S. to act as a prostitute the first time, she was insulated from punishment for pandering the second time. The court stated, "[DeLoach] did not transform S. into a prostitute for all time the first time she forced her daughter to go with [the customer]. The interpretation of Penal Code section 266i urged by appellant would require us to stigmatize the victim in this case as with a new form of Scarlet Letter. We decline to do so." (*DeLoach*, *supra*, 207 Cal.App.3d at p. 334.)

The interpretation urged by defendant could also lead to mischievous and potentially absurd results. (See *City of Poway v. City of San Diego*, *supra*, 229 Cal.App.3d at p. 858.) Trial court and appellate inquiry might be required to tease out just who might qualify as an "active prostitute." Would the defense be available only if the pimp's overture was made while his target was actually engaged in soliciting? Would people qualify as active prostitutes only if that was

9

their sole occupation, or would occasional resort to prostitution be sufficient? Would it make a difference if the prostitute also had legitimate employment? Would a hiatus of weeks or months transform an "active prostitute" into a former or inactive one? There is nothing in the legislative history or decades of case law that even remotely suggests an intent to raise these esoteric inquiries.

The language of the pandering statute describes current conduct on the part of the defendant: inducing and encouraging. That current conduct is aimed at producing subsequent conduct by the target: that the target thereafter engage in acts of prostitution following a defendant's inducement or encouragement. To encourage an established prostitute to change her business relationship necessarily implies that a defendant intends a victim "to become a prostitute" in the future regardless of her current status. We also think it safe to say that someone who encourages another to become a prostitute is seldom giving disinterested advice about a possible career path. The phrase "encourages another person to become a prostitute" can readily be understood to encompass the goal that the target "become a prostitute" in the future for the benefit of the encourager or some other pimp. (§ 266i, subd. (a)(2).) This interpretation of the pandering statute is consistent with long-standing case law and the Legislature's intent to combat pandering and prostitution.

It is also significant that section 266i has been amended six times since *Bradshaw* was decided in 1973, without any attempt by the Legislature to alter the interpretation set out above. "When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute." (*People v. Bouzas* (1991) 53 Cal.3d 467, 475.) In *Bouzas*, the statutes at issue were

10

amended 10 times over 73 years without any attempt to alter the courts' consistent interpretation of them. We concluded that "the Legislature acquiesced in and ratified the judicial interpretation of the . . . [statutes], and intended that the present version . . . receive a like interpretation." (*Ibid*.) Here, we have a similar pattern of legislative inaction signaling acquiescence, as there exists "both a well-developed body of law interpreting a statutory provision and numerous amendments to a statute without altering the interpreted provision . . . ." (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1156.)

*People v. Wagner* (2009) 170 Cal.App.4th 499, is the lone exception to the *Bradshaw* line of cases. There, the defendant was convicted under section 266i, subdivision (a)(2) after he unsuccessfully tried to pressure an active prostitute to come work for him. (*Wagner,* at p. 502.) He argued that the trial court erred by giving a modified jury instruction specifying that pandering occurs when "the defendant encourages or solicits one who is already a prostitute to 'change her business relationship.' " (*Ibid.*) The Court of Appeal reversed the defendant's conviction and criticized the established case law set out above as "utterly unconvincing." (*Id.* at p. 506.) The *Wagner* court concluded that the settled interpretation in place for decades was wrong because it is impossible to solicit a woman who was "currently" a prostitute to become one. (*Id.* at pp. 509-511.) It stated, "We feel this statute is clear. The language defining the crime as occurring when a defendant induces or encourages someone else to 'become a prostitute' seems fairly clear in its exclusion of efforts to importune someone currently engaged in that profession to change management. If the Legislature had wanted a more broadly applicable provision, it could have easily replaced the phrase 'become a prostitute' with the phrase 'engage in prostitution.' We cannot simply assume it meant the latter when it said the former." (*Id.* at p. 509.)

The Attorney General argues that *Wagner* rests on the misplaced notion that the Legislature intended to narrowly define and restrict the acts that constitute pandering. We agree. *Wagner* literally and narrowly reads the phrase "to become a prostitute" found in section 266i, subdivision (a)(2), in isolation from the remaining words and provisions of the pandering statute. Such an approach is contrary to established principles of statutory construction. Our obligation in this case is to construe section 266i to ascertain the intent of the Legislature and give effect to the intended purpose of the statute. "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

Considering subdivision (a)(2) in the context of the other provisions of the statute reveals that the intent and purpose behind section 266i, subdivision (a)(2) is to prohibit a person from encouraging a prostitute to work under his aegis or that of someone else, regardless whether the target being solicited is already a working prostitute.

Subdivision (a) contains six subparts. As noted, subdivision (a)(2), proscribes conduct that "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute." (§ 266i, subd. (a)(2).)

Subdivision (a)(1) criminalizes the "[p]rocur[ing of] *another person* for the purpose of prostitution." (§ 266i, subd. (a)(1), italics added.) Whether taken literally

12

or figuratively, there is no reason to conclude the term "another person" as used in subdivision (a)(1) would not encompass both prostitutes and nonprostitutes, as either can plainly be "procured" for the purpose of prostitution.

Subdivision (a)(3) criminalizes "[p]rocur[ing] for *another person* a place as an inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state." (§ 266i, subd. (a)(3), italics added.) Here again, the term "another person" encompasses all persons, regardless of their current employment pursuits.

Subdivision (a)(4) criminalizes conduct that "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages *an inmate of a house of prostitution*, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate." (§ 266i, subd. (a)(4), italics added.) Subdivision (a)(4) does not use the term "another person." But it specifically proscribes targeting those who are already in "a house of prostitution." In short, subdivision (a)(4) applies to active prostitutes.

Subdivision (a)(5) criminalizes conduct that "[b]y fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures *another person* for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution." (§ 266i, subd. (a)(5), italics added.) Once again, the term "another person," as used in subdivision (a)(5), applies to any solicited target, active prostitute or otherwise.

Finally, subdivision (a)(6) authorizes the prosecution of anyone who "[r]eceives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, *another person* for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution." (§ 266i,

13

subd. (a)(6), italics added.)  The term "another person" as used in this subdivision also applies to any victim, regardless whether that victim is already acting as a prostitute.

In conducting our statutory analysis, we reiterate that "[t]he words of [a] statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387.)  Subdivision (a)(1), and (a)(3) through (a)(6), of section 266i, when harmonized and read together in context, plainly envision that any solicited "person," whether an active prostitute or not, may be the target of unlawful pandering.  The plain intent and purpose behind all the provisions of section 266i, taken together, is to deter pimps or others from establishing new working relationships in the unlawful prostitution trade.  Our appellate courts have long recognized that California's pandering statute " 'cover[s] all the various ramifications of the social evil of pandering and include[s] them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned.' " (*Hashimoto, supra,* 54 Cal.App.3d at p. 866.)

It would be unreasonable and inconsistent to give the term "another person" a different meaning in subdivision (a)(2) from the meaning that term has when used in other subdivisions of the same statute.  (§ 266i, subd. (a)(2).)  Long-standing authority explains how the phrase "to become a prostitute" can and should be construed in harmony with the intent and purpose of the statute as a whole.  Because *Wagner* brought to light ambiguity in the statutory language, we also look beyond the words of the provision to the Legislature's intent in enacting it.  (*S. B. Beach Properties v. Berti*, *supra*, 39 Cal.4th at p. 379.)

Defendant's reasoning rests on the flawed "assumption that the Legislature was concerned only with actual, rather than potential, harm." (*Patton*, *supra*, 63

14

Cal.App.3d at p. 218.) "[T]he relevant social policy question is the potential for harm which defendant's conduct reveals. A substantial potential for social harm is revealed even by the act of encouraging an established prostitute to alter her business relations. Such conduct indicates a present willingness to actively promote the social evil of prostitution." (*Ibid.*) As noted, the Legislature intended section 266i to " 'cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned.' " (*Hashimoto*, *supra*, 54 Cal.App.3d at p. 866, quoting *People v. Montgomery, supra*, 47 Cal.App.2d at p. 24.) [6]

---

[6] Legislative intent in support of a broad interpretation of the phrase "encourages another person to become a prostitute" is exemplified by the Legislature's 1969 enactment of Assembly Bill No. 818 (1969 Reg. Sess.) section 2, amending section 266i. The amendment expanded the definition of pandering "by providing that pandering consists of procuring any prostitute— male or female—for prostitution. The act need not relate to a house of prostitution." (Assem. Com. on Criminal Procedure, Digest of Assem. Bill No. 818 (1969 Reg. Sess.) May 5, 1969.)

The Legislature understood that then-existing law recognized pandering as procuring only women for houses of prostitution. Assemblyman Robert Beverly, author of Assembly Bill No. 818, summed up the situation: "The intent of this measure is to plug existing loopholes in laws dealing with prostitution and related offenses . . . . [¶] We have had thrust upon us the male prostitute, and the female pimp, both of which have complicated the efforts of enforcement against commercialized prostitution activities. [¶] The existing Pimping and Pandering Statutes refer to female prostitutes, male pimps, and houses of prostitution. [¶] By this legislation, any person, rather than males only, may commit the crime of pimping when they derive support from the earnings of any prostitute, rather than female prostitutes only. [¶] In addition, *the legislation provides that the crime of pandering is complete when a person procures any other person for the purpose of prostitution*, rather than the procuring of a female person to become an inmate of a house of prostitution." (Assemblyman Robert G. Beverly, letter to June R. McKinnon on Assem. Bill No. 818 (1969 Reg. Sess.) Aug. 11, 1969, italics added.)

Consideration of the intent required to violate section 266i, subdivision (a)(2) also reveals additional problems with the narrow interpretation of that subdivision proffered by defendant and the *Wagner* court. We note that there is a split in authority regarding the intent required to commit an act of pandering. (See Judicial Council of Cal., Crim. Jury Instns. (2011) Bench Notes to CALCRIM No. 1151, p. 1000.) In *People v. Montgomery*, *supra*, 47 Cal.App.2d at page 16, the court held that pandering does not require specific intent. The *Montgomery* court stated, "The crime of pandering does not necessarily involve the question of specific intent. . . . [A]ll that is required . . . is the commission of any one of the acts set forth [in the pandering statute], and the only intent required is that the act be voluntarily done or performed by the person charged, with full knowledge of its nature. . . . Anyone who knowingly takes a part in the evil practice condemned is guilty of a violation of the law regardless of the state of his mind with relation to the act in question." (*Ibid*.)

But in *People v. Mathis* (1985) 173 Cal.App.3d 1251, 1256, the court concluded that pandering requires "a specific intent to influence a person to become a prostitute." The *Mathis* court explained: "It requires the defendant to cause, induce, persuade or encourage another person to become a prostitute; and the causing, inducing, encouraging or persuading must be accomplished *by* promises, threats, violence or any device or scheme. Implicit in the necessity of both of these elements of the crime is the inference of a specific intent to influence a person to become a prostitute. While evidence of such a mental state is likely to be circumstantial and, in a given case, the intent to influence may well be inferred from acts of assistance, 'we cannot extrapolate therefrom, as a matter of law, that the inference *must* be drawn. Intent [to influence] is what must be *proved* . . . .' " (*Id.* at p. 1256, fn. omitted.)

We clarify here that pandering is a specific intent crime. Its commission requires that a defendant intends to persuade or otherwise influence the target "to

become a prostitute" as that phrase has been interpreted here. This construction of section 266i, subdivision (a)(2) effectuates the purpose and intent of the pandering statute, which is to criminalize the *knowing and purposeful* conduct of any person seeking to encourage "another person" to work with the panderer or another pimp in plying the prostitution trade. The long-standing and broader construction of the phrase "encourages another person *to become a prostitute*" places the focus on the defendant's unlawful actions and intent, rather than making the targeted victim's character or occupation the determinative factors for conviction.

Defendant also argues that section 266i as a whole reflects a legislative intent to limit pandering to those who target nonprostitutes except in the case of prostitutes working in houses of prostitution.

Defendant relies on section 266i, subdivision (a)(4), which punishes as a panderer one who "[b]y promises, threats, violence or by any device or scheme, causes, induces, persuades or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, *to remain* therein as an inmate." (Italics added.) Defendant argues that if encouraging someone to continue to be a prostitute is pandering under subdivision (a)(2), then subdivision (a)(4)'s phrase "to remain" is redundant. Defendant's analysis is flawed.

Both subdivision (a)(3) and (a)(4) of section 266i address the specific issue of brothels. Subdivision (a)(3) prohibits placing a person in a brothel, and subdivision (a)(4) prohibits compelling or encouraging a brothel inmate to remain there. Neither subdivision (a)(3) nor (a)(4) uses the phrase "to become a prostitute." The People point out that the Legislature intended subdivision (a)(3) and (a)(4) to address the inherently coercive atmosphere in brothels, recognizing that delivering victims to a brothel, or acting to keep them there, are sufficiently evil acts whether or not the actor encourages or pressures the victim "to become" a

17

prostitute once there. Neither subdivision (a)(2)'s use of the phrase "to become" nor subdivision (a)(4)'s use of "to remain" refers to the activities of the victim, but instead focuses on the panderer's conduct. Accordingly, our interpretation of subdivision (a)(2)'s use of the phrase "to become" a prostitute does not render subdivision (a)(4)'s "to remain" language redundant. The interpretation affirmed here harmonizes the various subdivisions of section 266i in a reasonable manner. It carries out the Legislature's intent to combat the social evils inherent in recruitment for acts of prostitution, the perpetuation of the trade by the management and support offered by pimps, and the particularly coercive and socially dysfunctional activities associated with brothels.[7]

Accordingly we conclude that the proscribed activity of encouraging someone "to become a prostitute," as set forth in section 266i, subdivision (a)(2), includes encouragement of someone who is already an active prostitute, or undercover police officer. *People v. Wagner*, *supra*, 170 Cal.App.4th 499, and *People v. Montgomery*, *supra*, 47 Cal.App.2d 1, are disapproved to the extent they are inconsistent with this opinion.

---

[7]    Defendant claims that if we affirm the Court of Appeal, pandering would either become a lesser included offense of pimping or merge with it. This contention lacks merit. By the express requirements of the respective statutes, a conviction of pimping does not necessarily constitute a conviction of pandering. (Compare §§ 266h and 266i; see 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Sex Offenses and Crimes Against Decency, § 70, p. 382 ["[T]he crime of pandering, as defined by P.C. 266i, is distinct from that of pimping [Citation]."].) It is possible to commit one offense without committing the other.

    We also reject defendant's contention that the rule of lenity is applicable. (See *People v. Avery* (2002) 27 Cal.4th 49, 58; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 24, p. 53 ["The . . . rule applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule."].)

18

We also reject defendant's contention that there was insufficient evidence that he encouraged anyone to become a prostitute. Officer Cruz testified that defendant offered his services as a pimp by telling her he would provide her with protection, housing, and clothing if she turned her earnings over to him. Defendant twice identified himself as a pimp, assured Officer Cruz that she could continue to work in the same area, and promised that he would "take care of [her]." The evidence was sufficient and supports the judgment.[8]

---

[8] To the extent that defendant argues that he could not be convicted of anything more than attempted pandering because there was no possibility that Officer Cruz would become a prostitute, the contention fails. The statute is clear that the crime of pandering is complete when the defendant "encourages another person to become a prostitute" by "promises, threats, violence, or by any device or scheme . . . ." (§ 266i, subd. (a)(2).) There is no requirement that defendant succeed. (*Bradshaw*, *supra*, 31 Cal.App.3d at p. 425.) Nor is there a requirement that, in selecting his targets, the panderer choose only those who present a high probability of success. Again, the focus is on the actions and intent of the panderer, not the target.

19

## DISPOSITION

The Court of Appeal's judgment is affirmed.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**BAMATTRE-MANOUKIAN, J.**\*

---

**\*** Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**DISSENTING OPINION BY KENNARD, J.**

Encouraging another person "to become a prostitute" is a felony. (Pen. Code, § 266i, subd. (a)(2); all further statutory references are to the Penal Code.) Falling within that statutory language, the majority holds, is "encouragement of someone who is already an active prostitute" to become a prostitute. (Maj. opn., *ante*, at p. 18.) I disagree. I cannot fathom how one can "become" what one already is. And a defendant who, as here, solicits an undercover police officer in the mistaken belief that the officer already *is* a prostitute lacks the specific intent of encouraging another person "to become" a prostitute.

## I

In June 2007, Los Angeles Police Officer Erika Cruz, working undercover, posed as a prostitute on Sepulveda Boulevard in Van Nuys. Defendant Jomo Zambia drove past her, made a U-turn, stopped his truck across the street from her, and told her to get into his truck. When she asked him why, defendant said he was a pimp, adding he would take care of her by providing her with food and clothing. Defendant was then arrested.

Defendant was convicted of pandering. (§ 266i, subd. (a)(2).) The Court of Appeal upheld the conviction, as does the majority today.

## II

The law prohibits encouraging another "to become a prostitute." (§ 266i, subd. (a)(2).) The language is plain and unambiguous. The word "become"

1

means "[t]o pass from one state to another; to enter into some state or condition by a change from another state, or by assuming or receiving *new* properties or qualities, *additional* matter, or a *new* character." (Webster's 2d New Internat. Dict. (1941) p. 242, italics added; see also Webster's 9th New Collegiate Dict. (1988) p. 139.) Or, as defined in the leading law dictionary, the word "become" denotes a change from one condition to another. (Black's Law Dictionary (4th rev. ed. 1968) p. 195.) For example, a person who already is a police officer or a physician cannot be encouraged "to become" a police officer or a physician, because in either situation the person is not acquiring a new status. Similarly, one who already is a prostitute cannot be encouraged "to become" a prostitute. (§ 266i, subd. (a)(2).)

In holding to the contrary, the majority goes beyond the pandering statute's plain language. Nor do prior appellate decisions relied on by the majority support its holding.

### III

The majority notes that, with a single exception (*People v. Wagner* (2009) 170 Cal.App.4th 499 (*Wagner*)), previous Court of Appeal decisions have held that a person who is already a prostitute can be encouraged "to become a prostitute" (§ 266i, subd. (a)(2)). But, as *Wagner* has pointed out, those cases lack a sound legal basis for their holdings. The majority rejects that criticism.

The first of the decisions relied on by the majority is *People v. Bradshaw* (1973) 31 Cal.App.3d 421 (*Bradshaw*). That decision candidly acknowledged that *People v. Frey* (1964) 228 Cal.App.2d 33 (*Frey*), on which *Bradshaw* based its holding, did not actually address the issue of what "to become" means in the context of the pandering statute (*Bradshaw*, at p. 426). As Justice Bedsworth, the author of *Wagner,* succinctly put it: *Bradshaw* "was groping for a solution

2

without any precedential illumination." (*Wagner*, *supra*, 170 Cal.App.4th at p. 507.)

Nevertheless, the *Bradshaw* holding that the pandering statute can be violated by encouraging one who is already a prostitute to become a prostitute was then followed in *People v. Hashimoto* (1976) 54 Cal.App.3d 862, 866 and *People v. Patton* (1976) 63 Cal.App.3d 211, 216-218.  Neither determined whether the *Bradshaw* holding went beyond the scope of the statutory language (as in my view it did).  Instead, both *Hashimoto* and *Patton* looked to the social evil of pandering as justification for their holdings.  (*Hashimoto*, *supra*, 54 Cal.App.3d at p. 866; *Patton, supra,* 63 Cal.App.3d at p. 218.)  Today, the majority, citing *Hashimoto* and *Patton*, does the same.  (Maj. opn., *ante*, at pp. 6-8.)  To hold otherwise, the majority asserts, would insulate predatory behavior from punishment.  (*Id*. at p. 8.)

It may well be that encouraging a prostitute to work for a pimp is "predatory behavior" that warrants social sanction.  But, as I pointed out earlier at pages 1-2, the majority's holding goes beyond the Legislature's plain language in the pandering statute.  By reading into the statute words that are not there and by ascribing to the statutory phrase "to become a prostitute" a meaning that the words do not support, the majority has improperly expanded the statute's prohibited conduct.  Decreeing what conduct is punishable is exclusively the domain of the Legislature.  (*People v. Farley* (2009) 46 Cal.4th 1053, 1119.)

"Although the Penal Code commands us to construe its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4), it is clear the courts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings.  [Citation.]  Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly

3

within the import of their language.  [Citation.]”  (*Keeler v. Superior Court* (1970) 2 Cal.3d 619, 632.)

Those well-established principles of statutory construction have been aptly restated:  “When the government requires its citizens to do something under threat of penal consequence, its pronouncement must be clear.  A citizen is not obligated to guess what conduct is required or suffer a criminal penalty if he divines wrongly.  He is required to do what the law says, but no more. . . .  If the Legislature wants to clarify its requirement, it is certainly free to do so.  We are not empowered to criminalize conduct by judicial ukase, or to punish that which the Legislature has not brought within its penal reach.  To attempt to do so is a violation of the separation of powers provision of the California Constitution.”  (*People v. Kroncke* (1999) 70 Cal.App.4th 1535, 1558-1559 (conc. & dis. opn. of Corrigan, J.).)

The majority considers it significant that since *Bradshaw*, *supra*, 31 Cal.App.3d 421 was decided, the Legislature has amended the pandering statute six times, without abrogating the *Bradshaw* holding.  This inaction by the Legislature, the majority asserts, indicates legislative acquiescence in this holding.  (Maj. opn., *ante*, at p. 10.)  But, as noted recently, this court is reluctant “ ‘to draw conclusions concerning legislative intent from legislative silence or inaction.’ ”  (*People v. Farley*, *supra*, 46 Cal.4th at p. 1120.)  A court’s decision that, like *Bradshaw,* is not grounded on sound legal principles (see p. 2, *ante*) cannot acquire legal soundness simply through the Legislature’s lack of action to abrogate the decision.

The majority tries to justify its holding by relying on a rule of statutory construction that words of a statute are to be construed in context.  The statutory provision at issue prohibits encouraging “another person to become a prostitute.”

4

The majority notes that the statute's other subdivisions also use the term "another person."  The majority states:

"Considering subdivision (a)(2) in the context of the other provisions of the statute reveals that the intent and purpose behind section 266i, subdivision (a)(2) is to prohibit a person from encouraging a prostitute to work under his aegis or that of someone else, regardless whether the target being solicited is already a working prostitute.

"Subdivision (a) contains six subparts.  As noted, subdivision (a)(2), proscribes conduct that '[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute.'  (§ 266i, subd. (a)(2).)

"Subdivision (a)(1) criminalizes the '[p]rocur[ing of] *another person* for the purpose of prostitution.'  (§ 266i, subd. (a)(1), italics added.)  Whether taken literally or figuratively, there is no reason to conclude the term 'another person' as used in subdivision (a)(1) would not encompass both prostitutes and nonprostitutes, as either can plainly be 'procured' for the purpose of prostitution.

"Subdivision (a)(3) criminalizes '[p]rocur[ing] for *another person* a place as an inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state.'  (§ 266i, subd. (a)(3), italics added.)  Here again, the term 'another person' encompasses all persons, regardless of their current employment pursuits.

"Subdivision (a)(4) criminalizes conduct that '[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages *an inmate of a house of prostitution*, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate.'  (§ 266i, subd. (a)(4), italics added.)  Subdivision (a)(4) does not use the term 'another person.'  But it

5

specifically proscribes targeting those who are already in 'a house of prostitution.' In short, subdivision (a)(4) applies to active prostitutes.

"Subdivision (a)(5) criminalizes conduct that '[b]y fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures *another person* for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution.' (§ 266i, subd. (a)(5), italics added.) Once again, the term 'another person,' as used in subdivision (a)(5), applies to any solicited target, active prostitute or otherwise.

"Finally, subdivision (a)(6) authorizes the prosecution of anyone who '[r]eceives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, *another person* for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution.' (§ 266i, subd. (a)(6), italics added.) The term 'another person' as used in this subdivision also applies to any victim, regardless whether that victim is already acting as a prostitute." (Maj. opn., *ante*, at pp. 12-13.)

I disagree with the majority that its construction of section 266i's subdivision (a)(2) finds support in the statute's other subdivisions. Reading subdivision (a)(2) in context with the statute's other subdivisions readily shows that those other subdivisions, which pertain generally to procuring "another person for the purpose of prostitution," have no bearing on subdivision (a)(2)'s language prohibiting encouragement of "another person *to become* a prostitute." (Italics added.)

The Court of Appeal held that because, unlike the person solicited in *Wagner*, *supra*, 170 Cal.App.4th 499, here the person solicited by defendant (Officer Cruz, working undercover) was not a prostitute, it need not assess the

6

merits of the holding in *Wagner* that section 266i's subdivision (a)(2) is inapplicable when the person solicited is already a prostitute. In affirming defendant's conviction, however, the Court of Appeal overlooked the requisite intent for violating the statute. As explained below, defendant lacked that intent.

## IV

Defendant mistakenly thought that Officer Cruz, working undercover, was a prostitute. A mistake of fact that disproves the required intent for a crime is a defense to criminal liability. (§ 26, class Three; *In re Jennings* (2004) 34 Cal.4th 254, 277.) As the majority acknowledges, pandering is a specific intent crime. (Maj. opn., *ante*, at p. 16.) Accordingly, a violation of the pandering statute (§ 266i, subd. (a)(2)) requires a defendant to have the " 'specific intent to influence a person to become a prostitute' " (maj. opn., *ante*, at p. 16, quoting *People v. Mathis* (1985) 173 Cal.App.3d 1251, 1256). Under the majority's view that the statutorily prohibited conduct of encouraging another "to become a prostitute" also applies to encouraging a person who is *already* a prostitute "to become" a prostitute, the defendant's mistaken belief that Officer Cruz was in fact a prostitute has no bearing on the issue of specific intent. In my view, however, a defendant who, as here, solicits an undercover police officer in the mistaken belief that the officer *is* a prostitute lacks the specific intent to violate section 266i, subdivision (a)(2), which prohibits encouraging another person "to become a prostitute." Because the undisputed evidence shows that defendant must have mistakenly believed that Officer Cruz was a prostitute, defendant lacked the specific intent to support the conviction under section 266i, subdivision (a)(2). By nonetheless affirming his conviction, the Court of Appeal erred.

7

Unlike the majority, I would reverse the judgment of the Court of Appeal, which affirmed the trial court's judgment of conviction.


KENNARD, J.

**DISSENTING OPINION BY WERDEGAR, J.**

I respectfully dissent. The unambiguous language of Penal Code section 266i, subdivision (a)(2) precludes the application of that particular subdivision to those, like the undercover police officer here, whom the defendant believes already to be a prostitute. One simply cannot "become" what one already is, and if, as the majority holds, the statute requires the specific intent "to persuade or otherwise influence the target 'to become a prostitute' " (maj. opn., *ante*, at pp. 16-17), defendant cannot be convicted under this subdivision for attempting to recruit into his service a woman the evidence showed he believed already to be engaged in the business of prostitution.

This is not to say the majority is necessarily wrong about the legislative intent behind the statute. As the majority observes (maj. opn., *ante*, at pp. 12-13), the antipandering provisions of Penal Code section 266i, subdivision (a) cover a broad range of conduct, including much that ordinarily would involve persons already working as prostitutes. (See *id*., subd. (a)(1) [procuring a person for prostitution], (4) [persuading a person to remain an inmate of a house of prostitution], (5) [procuring a person for prostitution or inducing a person to travel for that purpose, by fraud or duress], (6) [giving or taking payment for procuring].) Reading the statute as a whole, the legislative concern clearly extends to the

1

promotion of the prostitution business generally and is not limited to schemes that induce new people to join that business.

In subdivision (a)(2) of Penal Code section 266i, however, the Legislature used clear and unambiguous language that does not extend as far as its evident intent in the pandering statute as a whole, but rather is restricted to those who are not, and are not believed by the defendant to be, already regularly engaged in prostitution. "But when, as here, the statutory language is clear and unambiguous, to [construe the language according to an intent it does not express] is to assert, in effect, that the language can be corrected on the ground it resulted from a drafting error. Courts should use this power to rewrite statutes 'with great restraint,' only where 'the error is clear and correction will best carry out the intent of the Legislature.' (*Bonner v. County of San Diego* (2006) 139 Cal.App.4th 1336, 1346, fn. 9 [44 Cal.Rptr.3d 116].) In the present case, I cannot be sure the language of [Penal Code section 266i, subdivision (a)(2)] resulted from a drafting error. While the language is [arguably] contrary to the overall purposes of the [pandering statute], its inclusion may have been the product of conceptual confusion or failure to fully consider the problem rather than an error in the drafting process itself." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 905 (conc. opn. of Werdegar, J.).) In construing criminal statutes, especially, we should be cautious about crossing the line between interpretation and revision. Whether to broaden criminal prohibitions beyond their existing statutory limits "is a legislative call, not a judicial one." (*People v. Wagner* (2009) 170 Cal.App.4th 499, 510.)

I agree with the unanimous court in *People v. Wagner*, *supra*, 170 Cal.App.4th 499, that the unambiguous language of Penal Code section 266i, subdivision (a)(2) restricts its application to targets who are not already working as prostitutes.  I would leave it to the Legislature to correct what may well have been an unintentional limitation on the scope of a criminal prohibition.

WERDEGAR, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Zambia
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 173 Cal.App.4th 1221
**Rehearing Granted**

_____

**Opinion No.** S173490
**Date Filed:** June 2, 2011
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Dennis E. Mulcahy, Temporary Judge*

_____

**Counsel:**

Vanessa Place, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala G. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., Scott A. Taryle, Lawrence M. Daniels and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

*Pursuant to California Constitution, article VI, section 21.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Vanessa Place
Post Office Box 351951
Los Angeles, CA  90035
(323) 934-5898

Rama R. Maline
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles,CA  90013
(213) 897-2287