Filed 4/24/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E057355 |
| Plaintiff and Respondent, | (Super.Ct.No. J245467) |
| v. | OPINION |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Brian Saunders, Judge.  Affirmed as modified.

Robert Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson, Michael T.

1

Murphy, and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jurisdictional hearing, the juvenile court found true that defendant and appellant A.M. (minor) committed battery by gassing while confined in juvenile hall (Pen. Code, § 243.9)[1] and resisting an executive officer (§ 69).[2] Minor was subsequently declared a ward of the court and placed in a suitable foster care facility. On appeal, minor contends (1) there was insufficient evidence to support his conviction for battery by gassing because the juvenile hall where he was confined did not qualify as a "local detention facility" within the meaning of section 243.9; and (2) the juvenile court failed to calculate his predisposition custody credits at the dispositional hearing. We agree with the parties that the record should be modified to reflect minor's predisposition custody credits. We, however, reject minor's remaining contention for the reasons explained below.

I

FACTUAL AND PROCEDURAL BACKGROUND

Minor has been the subject of two juvenile delinquency petitions—one in Orange County and one in San Bernardino County. In regard to the Orange County case, on July 30, 2012, minor admitted to committing oral copulation on an incompetent person in a mental health facility (§ 288a, subd. (h)). In return, the remaining allegations were

_____

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The simple battery (§ 242) allegation was dismissed.

2

dismissed. Because minor's adoptive mother resided in San Bernardino County, the matter was thereafter transferred to San Bernardino County[3] for disposition.

On August 9, 2012, the San Bernardino County Juvenile Court accepted the case, and ordered minor be detained in juvenile hall pending further proceedings.

Minor was housed at the Central Valley Juvenile Detention and Assessment Center, a detention facility operated by the San Bernardino County Probation Department. The facility is used for the detention and confinement of minors and wards of the juvenile court. The facility could be used to detain minors and wards for over 24 hours.

On August 26, 2012, San Bernardino County Probation Officer Ana Amezcua-Amador was on duty at the detention facility. She was supervising minor, and directed minor to walk for physical exercise during his outdoor activity time. Minor reluctantly complied at first, but then stopped walking. Amezcua-Amador again told minor to walk; however, minor raised his middle finger at her. Amezcua-Amador told minor his behavior was unacceptable, and ordered him to return to his room. Minor spat on the ground and said, "'That's what I think of you, bitch.'" As Amezcua-Amador escorted minor back to his room, minor continued to spit on the ground and yell obscenities at her.

When they arrived at minor's room, minor refused to enter his room and continued to act aggressively. Amezcua-Amador called for assistance. Minor eventually entered

_____

[3] Within the reporter's transcript, the reporter erroneously referred to the county being transferred to as "San Diego," not "San Bernardino."

3

his room, and as Amezcua-Amador attempted to close the room door, minor quickly turned around and spat on her. Minor's spit landed on her sunglasses and cheek. Minor admitted to spitting on Amezcua-Amador because he was angry at her, but denied that the spit hit her face, claiming it had landed on her jeans.

On September 24, 2012, a subsequent petition was filed alleging that minor had committed battery by gassing (§ 243.9, subd. (a)), simple battery (§ 242), and resisting an executive officer (§ 69).

Following a jurisdictional hearing, the juvenile court found true the allegations that minor committed a battery by gassing and resisting an executive officer; the simple battery allegation was dismissed.

At the dispositional hearing, minor was declared a ward of the court, placed in the custody of the probation department, and confined in juvenile hall pending placement in a suitable foster care facility. The court declared minor's maximum aggregate period of confinement for both petitions to be five years four months. The court did not indicate any predisposition custody time to be credited against minor's maximum aggregate period of confinement.

## II

## DISCUSSION

A.  *Battery by Gassing Conviction*

Minor contends that the evidence was insufficient to support the finding that he violated section 243.9 because the Central Valley Juvenile Detention and Assessment Center where he was detained at the time of the offense does not constitute "any local detention facility" within the meaning of that statute.  The People disagree, arguing that the plain meaning of the words "local detention facility" and the legislative history of section 243.9 includes a county juvenile hall facility.

Section 243.9 provides in relevant part:  "Every person confined in *any local detention facility* who commits a battery by gassing upon the person of any peace officer . . . or employee of the local detention facility is guilty of aggravated battery and shall be punished by imprisonment in a county jail or by imprisonment in the state prison for two, three, or four years."  (Italics added.)

The question before us is whether section 243.9, battery by gassing of peace officer or local detention facility employee, applies to a battery committed upon a local detention facility employee when a minor is confined in a juvenile hall.  Specifically, we must decide whether a juvenile hall comes within the definition of "any local detention facility" as that term is used in section 243.9.  There is no dispute here that minor was being detained at a juvenile hall at the time of the offense.  Accordingly, our task here is

5

to ascertain the intent of the Legislature as to whether it intended to include a juvenile hall as it pertains to section 243.9.**⁴**

        1.      Principles of statutory interpretation

Statutory interpretation is a question of law.  (*Reno v. Baird* (1998) 18 Cal.4th 640, 660.)  Consequently, appellate courts apply their independent judgment when interpreting a legislative act.  (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699.)  "Thus, the first step in statutory construction is to examine the statutory language and give it a plain and commonsense meaning." (*People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414.)  In other words, "We must give the statutory provisions at issue a reasonable and common sense interpretation, consistent with the apparent purpose and intention of the Legislature.  If possible, we will give significance to the plain meaning of every word, phrase, and sentence of a statute in pursuance of the legislative purpose, harmonizing the various parts of an enactment by considering each particular clause or section in the context of the statutory framework as a whole.  In this process, we must take into account the context, object, and history of the legislation, as well as public policy and contemporaneous construction in our attempt to arrive at a construction that is practical rather than technical in nature.  [Citations.]"  (*In re Rochelle B.* (1996) 49 Cal.App.4th 1212, 1216.)

---

      **⁴** We have discovered no cases addressing the applicability of section 243.9 to minors who commit gassing in juvenile halls.

6

If the plain language of the statute does not resolve the inquiry, as a second step, we may turn to maxims of construction, "'which serve as aids in the sense that they express familiar insights about conventional language usage.'" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)  Where the language of a statute is susceptible to more than one reasonable interpretation, we may look """"to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.]' [Citation.]" (*People v. Zambia* (2011) 51 Cal.4th 965, 972.)

"If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed to the third and final step of the interpretive process.  We apply 'reason, practicality, and common sense to the language at hand.' [Citation.]  The words of the statute should be interpreted 'to make them workable and reasonable.' [Citation.]  We will also consider the consequences that will flow from a particular statutory interpretation.  '"In determining what the Legislature intended we are bound to consider not only the words used, but also other matters, 'such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction. [Citation.]' [Citation.]" [Citation.]' [Citation.]" (*People v. Verduzco*, *supra*, 210 Cal.App.4th at p. 1414.)

2.    Analysis

We find that the language of section 243.9 applies to minors confined in juvenile hall based on the plain meaning of the words of the statute, given its ordinary meaning. The statute at issue here states, "Every person confined in *any local detention facility* who commits a battery by gassing upon the person of any peace officer . . . or employee of the local detention facility is guilty of aggravated battery." (Italics added.) The plain meaning of the words "every person" includes both adults and juveniles. Additionally, the plain, commonsense meaning of "any local detention facility" is a facility used for detaining persons operated by a county or city government as opposed to the state government. (See *City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729.) As such, the plain meaning of the language in section 243.9 indicates the statute applies to any person confined in *any* local detention facility run by a county or city government, such as a juvenile hall.

The Welfare and Institutions Code provides additional support to our conclusion that "any local detention facility" includes a juvenile hall. Welfare and Institutions Code section 202 allows a juvenile court to commit a minor "to a *local detention or treatment facility, such as a juvenile hall*, camp, or ranch." (Welf. & Inst. Code, § 202, subd. (e)(4), italics added.) Welfare and Institutions Code section 850 specifies that the place of detention of juvenile wards in a county "shall be known as the 'juvenile hall' of the county." (Welf. & Inst. Code, § 850.) Welfare and Institutions Code section 850 describes juvenile halls as a "place for the detention of wards and dependent children of

8

the juvenile court and of persons alleged to come within the jurisdiction of the juvenile court." (*Ibid*.) Welfare and Institutions Code section 852 states that juvenile halls are under the management and control of the probation officer. The probation officer shall appoint the superintendent and other employees of the juvenile hall; and the board of supervisors shall provide for payment for suitable salaries for such superintendent and other employees out of the general fund of the county. (Welf. & Inst. Code, §§ 853, 854.) Here, Amezcua-Amador testified that the Central Valley Juvenile Detention and Assessment Center is a detention facility operated by the San Bernardino County Probation Department, and that it is used for the detention and confinement of minors and wards of the juvenile court.

Minor offers no explanation for how the words of the statute, given their plain, commonsense ordinary meaning, could be interpreted to exclude juvenile halls. In fact, it would simply be absurd and unreasonable to exclude juvenile halls from the words "any local detention facility." We apply "reason, practicality, and common sense to the language at hand." (*People v. Verduzco*, *supra*, 210 Cal.App.4th at p. 1414.) Minor's interpretation of the statute would require this court to rewrite the statute by excluding a juvenile hall from the words "any local detention facility." This, however, is impermissible under the guise of statutory construction. (See *People v. Massicot* (2002) 97 Cal.App.4th 920, 925.) "In construing a statute, it is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. In other words, the courts

'may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.'" (*Ibid.*, citing and quoting *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.) "'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.'" (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 38.) Nothing in the context of section 243.9 justifies an interpretation of the phrase "any local detention facility" in any manner contrary to its plain meaning. Accordingly, we conclude that the words "any local detention facility" found in section 243.9 include juvenile halls.

Analysis of extrinsic factors, such as legislative history, public policy, and the statutory scheme of which the statute is a part, also supports our conclusion. Section 243.9 was added to the Penal Code in 2001 by Chapter 627, Assembly Bill 1449 (AB 1449), entitled "Correctional Institutions—Battery by Gassing." (Stats. 2000, ch. 627, § 1.) AB 1449 also amended section 4501.1, and added section 1768.85 to the Welfare and Institutions Code. (Stats. 2000, ch. 627, §§ 2, 3.) Together, these three provisions identify gassing as an aggravated battery when it is committed by any person while confined in a state prison (§ 4501.1), a facility of the Division of Juvenile Facilities, formerly known as the Department of the Youth Authority (DYA) (Welf. & Inst. Code, §§ 1768.85, 1703, subd. (c), 1710), or a local detention facility (§ 243.9). Prior to the enactment of AB 1449, gassing was recognized as an aggravated battery only

10

when it was committed by a person detained in a state prison. (Stats. 1997, ch. 591, § 1(AB 995), adding section 4501.1 to the Penal Code.)

The Legislative Counsel's Digest notes: "This bill would provide that the above-described provisions of law are applicable to any 'peace officer' rather than 'officer of the state prison,' *extend the prohibition in those provisions to any person confined in an institution under the jurisdiction of the Department of the Youth Authority or a local detention facility*, require a report by the Department of the Youth Authority, as specified, and would delete the provisions that would repeal these provisions of law after January 1, 2001, thereby continuing those provisions indefinitely. This bill would additionally require actual contact with the victim's skin or membranes in order to constitute the offense. This bill would also make the offense punishable as a misdemeanor or a felony, as specified. The bill would make related changes." (Legis. Counsel's Dig., AB 1449 (1999-2000 Reg. Sess.), italics added.)

The apparent intent of this legislation was to expand the scope of gassing by battery to include facilities other than a state prison, including the DYA and a local detention facility, and to impose increased punishment for minors who commit battery by gassing. Although the legislative history of section 243.9 does not specifically mention juvenile halls, section 243.9 was clearly expanded to include gassings committed by minors in state and local detention facilities. Indeed, when the Legislature extended the gassing provision to local detention facilities, it did not indicate it would exclude local detention facilities that were used for the confinement of minors, such as juvenile halls.

11

We also note that the legislative analysis of AB 1449 shows that the issue of gassing by minors in local juvenile facilities was pointed out during discussions of the bill. The comment in the bill analysis prepared by chief counsel for the Assembly Committee on Public Safety states: "Although there is no material presented to document that gassing is a problem at local juvenile detention facilities, the possibility exists. The author may wish to consider an amendment to include juvenile detention facilities expressly in the language of this bill." (Assem. Com. on Public Safety, analysis of Assem. Bill No. 1449 (1999-2000 Reg. Sess.), pp. 2-3.) However, as pointed out by minor, that amendment was never added, and when the bill reached the Senate for its third and fourth reading, it omitted any mention of minors in juvenile hall. A reasonable conclusion could be that the Legislature believed the broad language of the phrase "any local detention facility" adequately encompassed and expressed that a juvenile detention facility would be included in the phrase "any local detention facility" without specifically mentioning juvenile halls. Moreover, to exclude juvenile halls in interpreting the phrase "any local detention facility" as used in section 243.9 would lead to absurd results and defy reason and common sense.

Minor argues that the term "local detention facility" is defined in section 6031.4, subdivisions (a) and (b), which state as follows: "(a) For the purpose of this title, 'local detention facility' means any city, county, city and county, or regional facility used for the confinement for more than 24 hours of adults, or of both adults and minors, *but does*

12

*not include that portion of a facility for the confinement of both adults and minors which is devoted only to the confinement of minors*.

"(b) In addition to those provided for in subdivision (a), for the purposes of this title, 'local detention facility' also includes any city, county, city and county, or regional facility, constructed on or after January 1, 1978, used for the confinement, regardless of the length of confinement, of adults or of both adults and minors, *but does not include that portion of a facility for the confinement of both adults and minors which is devoted only to the confinement of minors*." (Italics added.)

Relying on the italicized language above of section 6031.4 and the legislative history of section 243.9, minor claims that "any local detention facility" cannot logically include a juvenile hall because the sole purpose of a juvenile hall is to "house suspected juvenile delinquents or wards of the court." The People respond that the definition of "local detention facility" found in section 6031.4 does not specifically apply to section 243.9 because that section appears in Title 7 of Part 3 of the Penal Code, which addresses the composition, powers, duties, and administration of the newly established Corrections Standards Authority within the Department of Corrections and Rehabilitation. (See § 6024 et seq.) We are inclined to agree with the People. Section 6031.4 specifically states, "[f]or the purpose of this title." By prefacing the definition of the phrase "local detention facility" with the words "[f]or the purpose of this title," the Legislature expressly limited the application of that definition to Title 7 of Part 3 of the Penal Code, and thereby did not intend for that definition to apply to the

13

phrase "local detention facility" when used in other titles of the Penal Code. Section 243.9 is found in Title 8 of Part 1 of the Penal Code. Therefore, the definition of "local detention facility" found in Title 7 of Part 3 of section 6031.4 does not apply to section 243.9.

Having examined the parties' arguments, in their briefs and at oral argument, and based on the foregoing, we conclude that the phrase "any local detention facility" as used in section 243.9 includes juvenile halls.

B. *Predisposition Custody Credits*

Minor also contends, and the People correctly agree, that the juvenile court failed to calculate his predisposition custody credits at the dispositional hearing. We also agree.

In a juvenile delinquency proceeding, "a minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing. [Citations.] It is the juvenile court's duty to calculate the number of days earned, and the court may not delegate that duty. [Citations.]" (*In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067.) "[W]hen a juvenile court elects to aggregate a minor's period of physical confinement on multiple petitions . . . , the court must also aggregate the predisposition custody credits attributable to those multiple petitions." (*Ibid.*; see also Welf. & Inst. Code, § 726, subd. (c) ["If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the 'maximum term

14

of imprisonment' shall be the aggregate term of imprisonment specified in [Pen. Code, § 1170.1, subd. (a)] . . . ."].)

Here, there is no evidence in the record to suggest that the juvenile court calculated minor's predisposition custody credits for the Orange County case and the instant case, which should have been aggregated with a credit for time spent in custody pursuant to the sustained petitions. Minor was taken into custody on the Orange County case on November 10, 2011, and he remained in custody until the dispositional hearing in the instant matter on October 4, 2012, for a total of 330 days. Thus, minor is entitled to 330 days of predisposition custody credits against minor's maximum aggregate period of confinement.

III

DISPOSITION

The adjudication order is affirmed but remanded to the juvenile court with directions to modify the order to reflect 330 days of actual predisposition custody credit to be credited against minor's maximum period of physical confinement.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:


RICHLI
J.


KING
J.

15