Filed 10/17/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B281975 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA447593 |
| RAYMOND JAMES VALDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C.H. Rehm, Jr., Judge.  Affirmed.

Law Office of Tyrone A. Sandoval and Tyrone A. Sandoval, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Raymond James Valdez of gassing in violation of Penal Code section 243.9(a).[1] Valdez had spit in the face and at the upper chest of a sheriff's deputy—covering her face with saliva—as deputies were returning him to the lockup from a courtroom. Valdez argues the courtroom was not a "local detention facility" within the meaning of the statute. We disagree. We therefore affirm Valdez's conviction.

## FACTS AND PROCEDURAL BACKGROUND

1. ***Valdez spits in a deputy's face in a courtroom***

On March 11, 2016, Valdez was transported to a Los Angeles County courthouse for a pretrial proceeding in a case the district attorney's office had filed against him.[2] The courthouse had a lockup with four or five cells. The lockup was connected to the courtroom, separated by a hallway and two locked doors. Los Angeles County Sheriff's Department Deputy Sherry Parriott and two other deputies were working as bailiffs in the court. Valdez was handcuffed. He was sitting right outside of the lockup—"right at the door" to the lockup—next to his attorney. The courtroom was very small.

When Valdez's court appearance was over, Parriott told him to stand up and "exit the courtroom," to go through the door into the lockup. Valdez stood up, "told the judge[,] 'fuck you,'" twice, then looked in turn at each of the deputies working with Parriott and said, "Fuck you in uniform." Valdez then looked directly at Parriott and said, "Fuck you in uniform. Fuck the

---

[1]     Statutory references are to the Penal Code.

[2]     That case appears to have been Case No. 6EM01137, charging Valdez with battery on a transit driver or passenger in violation of section 243.3.

police." Valdez spit at Parriott and "all the saliva was all on [her] face and part of [her] shirt." According to Parriott, Valdez's "spit . . . was all over [her] face, especially [her] eyelashes[;] . . . it was everywhere." Parriott "immediately went to the break room and . . . washed [her] face."

As a consequence of being spit on, Parriott had to have blood tests and take preventive medications that caused significant side effects, including vomiting blood.

## 2. *The charge, the trial, and Valdez's sentence*

The People charged Valdez with battery by gassing in violation of section 243.9(a). The People alleged Valdez had a prior strike conviction for assault with a firearm as well as three prison priors under section 667.5(b).

After attempts to resolve the case failed, the matter proceeded to trial in March 2017. At the conclusion of the evidence, the court discussed jury instructions with the attorneys. The prosecutor asked the court to give CALCRIM No. 2722, "Battery by Gassing." At the jury instruction conference, the lawyers presented arguments about the meaning of the phrase "local detention facility" used in the statute and in the jury instruction. The prosecutor cited *In re A.M.* (2014) 225 Cal.App.4th 1075. In that case, a minor detained in a juvenile hall spit in the face of a probation officer. Quoting language from the *In re A.M.* case, the prosecutor argued, "[T]he plain common sense meaning of any local detention facility is a facility used for detaining persons operated by a county or city government as opposed to a state government. In this case the alleged incident occurred inside a courtroom. The defendant was in custody and [a] foot away from the door into lockup. And the People's argument is that a broad description of local detention facility should be given to the jury because the witnesses have provided testimony that there is a lockup facility [and] that the facility

3

itself was used to detain people and it is a county courthouse operated by the Los Angeles County Sheriff's Department." Defense counsel disagreed, arguing the juvenile hall in *In re A.M.* was different from a "courthouse lockup."[3]

The trial court stated, "[T]he plain common sense meaning of [']any local detention facility['] is a facility used for detaining purposes operated by a county or city government as opposed to the state government. So it appears to the court that . . . would include the custody lockup adjacent to a courtroom where custody defendants are detained. [¶] That facility is operated by the county and it appears to the court that [a] defendant housed in such a facility is housed in a local detention facility." The court then asked counsel to address the issue before the court: "that the subject events took place in court not in the lockup."

The prosecutor responded, "[W]ith respect to the placement of a defendant in a courtroom adjacent to the lockup when the incident occurs, that is still part of the same facility in which the lockup exists and the defendant is in custody at that time. . . . [¶] [T]he courtroom is, in fact, adjacent and part of the facility and is

---

[3] Defense counsel also argued that the definition of "local detention facility" in section 6031.4 appears not to include a courtroom or adjacent lockup. The prosecutor responded that the court of appeal in *In re A.M.* held "the definition of 'local detention facility' found in [section 6031.4 in] title 7 of part 3 . . . does not apply to section 243.9," the gassing statute. (See *In re A.M.*, *supra*, 225 Cal.App.4th at p. 1085.) Section 6031.4 appears in a part of the Penal Code that requires the Board of State and Community Corrections to set minimum standards, conduct inspections, and issue reports for facilities maintained by local or regional governments and not operated by the Department of Corrections and Rehabilitation. (See §§ 6024-6033.) Valdez does not repeat this argument on appeal.

4

the necessary functional portion for which the lockup exists . . . to have people in custody present . . . at their own hearings and those are required to be public courtrooms. So the fact that the public can also come into [a] courtroom should not change the fact that it is all part of the same facility and that the defendant is there a foot away from the door to . . . have his business heard by the court." Defense counsel characterized the prosecutor's argument as "quite a stretch" because "there [is] a lockup door that separates physically the courtroom from the facility that this particular Penal Code contemplates and to say that it is just a foot or two away doesn't make it the fact [*sic*] he was actually not within that lockup facility." Counsel continued, "I think that this issue would be different and I would agree with the People had this actually occurred within the lockup facility. It did not. It occurred in the courtroom and I think because of that, that is very significant. . . . The plain statutory language is[,] [']in a lockup facility.['] He was not in a lockup facility at the time."

The trial court then ruled: "This court, as did the *In re A.M.* court[,] concludes that the term [']local detention facility['] is appropriately construed in this manner to include any location where a defendant in custody of the county government, although temporarily, located in the courtroom, but still housed in county jail, is indeed in a location, that is a local detention facility." The parties agreed the court should fill in the blank in CALCRIM No. 2722 for the "description" of "a local detention facility" as follows: "A facility used for detaining persons operated by a county government is a local detention facility." The court read that instruction to the jury.

The jury found Valdez guilty of battery by gassing. At the conclusion of a priors trial, the jury also found Valdez's strike prior and prison priors to be true. The trial court sentenced Valdez to 11 years in the state prison, consisting of the upper

term of four years, doubled because of the strike prior, plus three one-year prison priors.

## DISCUSSION

Valdez contends "a courtroom is not a local detention facility under Penal Code section 243.9, subdivision (a)" and, accordingly, "there is insufficient evidence supporting the conviction . . . ." As the parties note, this appeal presents an issue of statutory construction.

"Statutory interpretation is a question of law.  [Citation.] Consequently, appellate courts apply their independent judgment when interpreting a legislative act." (*In re A.M.*, *supra*, 225 Cal.App.4th at pp. 1080-1081.)  "[T]he first step in statutory construction is to examine the statutory language and give it a plain and commonsense meaning," "a reasonable and common sense interpretation, consistent with the apparent purpose and intention of the Legislature." (*People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414 (*Verduzco*); *In re Rochelle B.* (1996) 49 Cal.App.4th 1212, 1216.)  "If the plain language of the statute does not resolve the inquiry, as a second step we may turn to maxims of construction" and look to "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Verduzco*, at p. 1414; *People v. Zambia* (2011) 51 Cal.4th 965, 972.)

"If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed to the third and final step of the interpretive process.  We apply 'reason, practicality, and common sense to the language at hand.' [Citation.]  The words of the statute should be interpreted 'to make them workable and reasonable.' [Citation.]  We will also consider the consequences

6

that will flow from a particular statutory interpretation." (*Verduzco*, *supra*, 210 Cal.App.4th at p. 1414.)

Valdez does not dispute that the Los Angeles County jail is a "local detention facility." Valdez also concedes the lockup within a Los Angeles County courthouse is a "local detention facility." But he argues the courtroom does not constitute a "local detention facility" because the lockup "was detached from the courtroom by a long hallway and a series of two locking doors." The language of the statute, by itself, does not answer our question.

Our Legislature enacted section 243.9 in 2000, effective in 2001. (*In re A.M.*, *supra*, 225 Cal.App.4th at p. 1083.) Before the addition of section 243.9 to the Penal Code, gassing was an aggravated battery only when committed by a person detained in a state prison. (*In re A.M.*, at p. 1083.) "The apparent intent of this legislation was to expand the scope of battery by gassing to include facilities other than a state prison, including the [Department of the Youth Authority] and local detention facilities . . . ." (*Id.* at p. 1084.)

Turning to reason and practicality, we conclude Valdez's actions here violated section 243.9. The court had remanded Valdez in his misdemeanor battery case. A defendant awaiting trial, like Valdez, is brought to court by sheriff's deputies for each court appearance. The courthouse in question had several cells in its lockup. Deputies working as bailiffs and court security officers "tak[e] the inmates and escort[ ] them into the court and back into their cells." When a particular court is ready for a particular inmate, the bailiff has "the inmate come in and sit down and the attorney . . . sit[s] down beside[ ] them." Valdez was "wearing L.A. County issued inmate clothing" that day; he was in custody and handcuffed.

7

In short, Valdez was confined to the county jail while awaiting trial, brought to the courthouse by sheriff's deputies, kept in the lockup until the court was ready to call his case, brought by bailiffs into the courtroom long enough for his pretrial matter to be heard, then returned to the lockup and eventually returned to the jail. The purpose of the battery by gassing statute is to deter individuals in custody from spitting on, or throwing feces or urine on, peace officers. Construing the statute as Valdez suggests would defeat this purpose. An inmate who spits on a deputy just before she brings him into the courtroom would be guilty of gassing. An inmate who spits on a deputy just after she has brought him through the door and into the courtroom—where he plainly remains detained and in custody—would not. We decline to endorse such a result.

*People v. Watson* (2007) 42 Cal.4th 822 (*Watson*), cited by the Attorney General, is also instructive. Watson was serving a sentence in state prison. The prison transferred him to Atascadero State Hospital for mental health treatment. While at the hospital, Watson lunged at a nurse and hit him in the face. The People charged Watson with violating Penal Code section 4501.5, "which provides that any person 'confined in a state prison' who commits a battery upon a nonprisoner is guilty of a felony." (*Watson*, at pp. 824-825.) The court of appeal held Watson was not "confined in a 'state prison' " within the meaning of the statute after his transfer to Atascadero. (*Id*. at p. 827.) The court concluded that Atascadero was not a "state prison" because mentally ill inmates transferred to the hospital "are no longer in the custody of the Department of Corrections and Rehabilitation, but are in the custody of Atascadero, which is under the jurisdiction of the State Department of Mental Health." (*Id*. at p. 828.)

8

The Supreme Court reversed. The court noted section 4504 defines a person "confined in a 'state prison' " as an inmate confined in certain enumerated prisons "as well as a person who, at the time of the offense, is 'temporarily outside the walls or bounds of the prison.' " (*Watson*, *supra*, 42 Cal.4th at p. 824.) The court stated the statute includes prisoners who are serving on work details or "temporarily outside the walls of a prison . . . 'for the purpose of confinement in a local correctional institution pending trial or for any other purpose . . . .' " (*Id.* at pp. 828-829, 832.) Turning to the meaning of "temporarily," the court said that, even though a transfer to a state hospital for treatment is for an indefinite period, the statutes require corrections officials to "send for, take[,] and receive the prisoner back into state prison" as soon as his treatment is finished. (*Id.* at p. 829.) The court also stated that its construction of "confined in a 'state prison' " "effectuate[d] the public policy underlying [the aggravated battery] statute," citing, among other cases, *In re Smith* (1966) 64 Cal.2d 437, 439 ["the purpose of [statutes prohibiting assault and battery by those confined in a state prison] is to promote prison safety by discouraging assaults by prison inmates"]. (*Watson*, at p. 833.)

While section 243.9 does not include language defining "confined in any local detention facility" explicitly to include inmates "temporarily outside the walls" of the facility, the reasoning is the same. In *Watson*, a state prison inmate was transported to a state hospital for treatment and eventually returned to the prison. Here, Valdez, an inmate in the county jail, was transported to the courthouse for his court appearance and then returned to the county jail to await trial. Indeed, here, Valdez remained under the custody, supervision, and control of the sheriff's department from when he left the jail until he returned (unlike Watson, who did not remain under the control

9

of corrections personnel while in a state mental hospital).  Here, as in *Watson*, giving the statute its practical, reasonable, common sense interpretation promotes our Legislature's goal of protecting peace officers from battery by inmates.

## DISPOSITION

We affirm Raymond James Valdez's conviction.


**CERTIFIED FOR PUBLICATION**




EGERTON, J.

We concur:



EDMON, P. J.



DHANIDINA, J.