Filed 10/21/21  In re M.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.M.,<br><br>    Defendant and Appellant. | F081416, F081420<br><br>(Super. Ct. Nos. MJL018415-C, MJL018415-D)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Thomas L. Bender, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE DISSENTING OPINION**

Minor, M.M., appeals from a disposition order continuing him as a ward of the juvenile court and committing him to juvenile hall. On appeal, he argues (1) the juvenile court erroneously admitted an unauthenticated video from which minor was identified, (2) witness identification of minor was tainted by unduly suggestive identification procedures, and (3) the juvenile court erroneously calculated predisposition credit. The People agree that the erroneous admission of the unauthenticated video is reversible error but disagree with minor's other contentions. We reverse.

## PROCEDURAL SUMMARY

### Case No. MJL018415-C

On August 17, 2018, the Madera County District Attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. MJL018415-C, alleging minor carried a concealed dirk or dagger (Pen. Code, § 21310;[1] count 1).

On August 20, 2018, the petition was amended to reduce count 1 to a misdemeanor. On the same date, the minor admitted the truth of count 1.

On September 6, 2018, the juvenile court continued minor as a ward of the court, set terms and conditions of probation, and committed him to an 18-month correctional academy.

On December 16, 2019, the Madera County District Attorney filed a petition alleging minor violated his probation (Welf. & Inst. Code, § 777) in case No. MJL018415-C by committing the offenses alleged in the wardship petition filed in case No. MJL018145-D.

On June 25, 2020, the juvenile court found minor violated his probation.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

**Case No. MJL018415-D**

On December 16, 2019, the Madera County District Attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. MJL018415-D, alleging minor committed attempted robbery (§§ 211, 664; count 1), assault with a firearm (§ 245, subd. (a)(2); count 2), and possession of marijuana by a minor (Health & Saf. Code, § 11357, subd. (a)(1)(A); count 3). As to count 1, the petition further alleged minor was armed with a firearm (§ 12022, subd. (a)(1)).

On December 17, 2019, count 3 was stricken.

On June 25, 2020, the juvenile court found count 1 to be true but found the firearm allegation and count 2 to be not true.

On July 9, 2020, the juvenile court held a disposition hearing on case Nos. MJL018415-C and MJL018415-D. It continued minor as a ward of the court and committed him to juvenile hall for 211 days with credit for 211 days served.

On July 13, 2020, minor filed a notice of appeal.

## FACTUAL SUMMARY

### The Attempted Robbery

On December 3, 2019, at about 9:45 a.m., Reggie H. drove to a convenience store to purchase a drink and a snack. As he left the store, he saw someone to his right, in his peripheral vision, standing near a cage containing propane tanks. Reggie opened the door to his vehicle and began putting his purchases inside when he heard the person he had seen say, "Give me your wallet." He turned and saw an approximately five-foot tall person wearing an oversized black hooded sweatshirt with the hood up and a green bandana concealing the lower portion of his face. The person was holding a three- to four-inch knife in their left hand.

Reggie told the assailant " 'No,' " he would not surrender his wallet. Reggie noticed the person pause then saw that a handgun had hit the pavement under the driver

3.

side door of Reggie's vehicle.[2]  Reggie raised his hands and backed away from the assailant along the driver's side toward the rear of the vehicle.  The assailant then picked up the firearm and walked in the same direction Reggie had gone.  As the assailant approached, Reggie walked toward the front of the vehicle along the passenger's side, keeping the vehicle between them.  The assailant then left.

The owner of the store told Reggie that the store's security cameras recorded the attempted robbery.[3]  Soon after, sheriff's deputies arrived.  Reggie described the assailant's height and attire to the deputies.  Madera County Sheriff's Deputy Johnathan Rodriguez obtained a surveillance video of the attempted robbery from the store.  From that video, Rodriguez captured People's Exhibit 3, a still photograph.[4]

---

[2]    Reggie commented that the handgun could have been a pellet gun "because it didn't sound like a heavy gun" when it hit the ground.

[3]    A surveillance video of the attempted robbery was admitted into evidence as People's Exhibit 1.  A second video, that purportedly showed the "suspect walking onto the property" was admitted into evidence as People's Exhibit 2.  However, Reggie testified only that the person in People's Exhibit 2 "look[ed] like the individual who tried to … who asked [Reggie] to give [him] [Reggie's] wallet … " because the person depicted in People's Exhibit 1 and the person depicted in People's Exhibit 2 had similar black baggy clothes.  However, he could only say "for a fact" that People's Exhibit 1 was a true and correct depiction of the attempted robbery.  Reggie did not know if People's Exhibit 1 and People's Exhibit 2 were both videos from the same day.  Minor's counsel objected to admission of People's Exhibit 2 on relevance and authentication grounds.

[4]    Although Rodriguez mentioned only a single video, Probation Officer Julian Badillo later identified People's Exhibit 3 as a still photo taken from People's Exhibit 2.  However, People's Exhibit 3 was never admitted.

**The Identification**

On December 11, 2019, Badillo received a message from Deputy Probation Officer Alma Garcia, asking whether he could identify the person in the attached photograph (People's Exhibit 3). People's Exhibit 3 was a still shot from People's Exhibit 2, a video of a person walking to the gas station from a different angle as the video that captured the attempted robbery.[5] Badillo identified the person in People's Exhibit 3 as minor. He had worked with minor and been around him nearly every day in the previous three to four years at the "boot camp aftercare program." The following day, Badillo also saw People's Exhibit 2. He explained that he recognized minor's clothing, the distinctive way minor wore his clothing, his glasses, and the way he walked. Badillo further testified that the person in People's Exhibit 2 approached the camera from the direction of minor's home.

On December 12, 2019, Deputy Probation Officer Veronica Ruiz was working at a football game as part of her duties with the correctional academy and aftercare program. She was approached by Detective Eric Grijalva to identify the person depicted in a photograph on Grijalva's cell phone.[6] Ruiz recognized the person depicted in the photograph to be minor.[7] Minor was part of her caseload and she had worked with him at least four days per week since December 2018. The following day, Ruiz received an

---

[5]     At the contested jurisdictional hearing, Badillo identified minor from People's Exhibits 2 and 3. Minor's trial counsel objected to admission of the identification testimony on relevance grounds because foundation had not been laid to establish that People's Exhibits 2 and 3 were related to the case.

[6]     Before Ruiz was shown the photograph, she was told that Badillo was also shown the photograph. She and Badillo shared a caseload of approximately 30 minors. She understood Grijalva was showing her the photograph because Grijalva believed the person in the photograph was one of the minors in her caseload, the majority of whom she shared with Badillo.

[7]     Minor's trial counsel objected to admission of identification testimony on relevance grounds because foundation had not been laid to establish that the photo or video were related to the case.

email with a video depicting minor "walk up to the gas station," "walk up to a vehicle," "approach[] a man," "the man r[u]n off," "something f[a]ll to the ground," minor "pick[] up [the fallen] item and then r[u]n off in the opposite direction." Ruiz recognized the way minor walked and his "baggy, loose-fitting" clothing.

## DISCUSSION

Minor first argues that the People failed to authenticate People's Exhibit 2 and the juvenile court therefore erred in admitting that exhibit. Because no other evidence linked the identification of minor to People's Exhibit 1, minor argues the error was not harmless. The People agree, as do we.

We review a lower court's finding that sufficient foundational facts have been presented to support a writing's admissibility for abuse of discretion. (*People v. Flinner* (2020) 10 Cal.5th 686, 727; accord, *People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*).) Under this deferential standard, a juvenile court's ruling will not be disturbed on appeal " 'except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Goldsmith*, at p. 266; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)[8]

"Authentication of a writing is required before it may be received in evidence." (Evid. Code, § 1401, subd. (a).) Authentication of a writing—including a video (Evid. Code., § 250)—"means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) "The statutory definition ties authentication to relevance." (*Goldsmith*, *supra*, 59 Cal.4th at p. 266.)

---

[8]    Defendant contends that we should review the juvenile court's ruling de novo because the juvenile court "misapplie[d] the law to undisputed facts …." The People disagree. We need not resolve this dispute because reversal is required under either standard.

"As with other writings, the proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph or video recording is being offered to prove and with the degree of possibility of error. [Citation.] The first step is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case." (*Goldsmith*, *supra*, 59 Cal.4th at p. 267; *People v. Flinner*, *supra*, 10 Cal.5th at p. 727 [" 'The proponent's assertion as to why the writing is relevant determines what the proponent claims the writing is, typically that it has some specific connection to a person or organization, whether through authorship or some other relation. It is this connection that must be proved to authenticate the writing.' "].) "The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. [Citations.] Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' " (*Goldsmith*, at p. 267.)

Where, as here, a video is admitted to prove the identity of a person in a separate video, some proof must be offered to show a relationship between the two videos. (See *Goldsmith*, *supra*, 59 Cal.4th at pp. 267–268.) "This foundation may, but need not be, supplied by the person taking the photograph [or video] or by a person who witnessed the event being recorded. [Citations.] It may be supplied by other witness testimony, circumstantial evidence, content and location." (*Goldsmith*, at p. 268; see *People v. Skiles* (2011) 51 Cal.4th 1178, 1187.) Authentication may also be provided by statutory presumptions, for instance, Evidence Code section 1553, subdivision (a), establishes a rebuttable presumption that "[a] printed representation of images stored on a video or digital medium is presumed to be an accurate representation of the images it purports to

represent." (See Evid. Code, § 1552, subd. (a) [creating a similar presumption for computer-generated information].)

Here, the parties agree there was no testimony proffered to show *when* People's Exhibit 2 was created or that it was created close in time to People's Exhibit 1. Further, neither exhibit bore a time or date stamp. Reggie testified that the person depicted in People's Exhibit 2 "looks like the individual who tried to—who asked me to give him my wallet, but again [¶] … [¶] all I can say is, for a fact, is the one in the previous video that you showed me [(People's Exhibit No. 1)] the individual coming to me is the one that I could say what occurred." Reggie did not witness the events depicted in People's Exhibit 2 and did not know if People's Exhibit 2 was created on the same date as People's Exhibit 1. Badillo testified that he viewed People's Exhibit 2 and it was the video from which the identification photograph was captured. However, he did not know when the video was created in relation to People's Exhibit 1. As the parties agree, the prosecutor failed to lay adequate foundation to authenticate People's Exhibit 2. People's Exhibit 2 was therefore erroneously admitted.

Erroneous admission of evidence is evaluated under the harmlessness standard of *People v. Watson* (1956) 46 Cal.App.2d 818, 836. (*People v. Chism* (2014) 58 Cal.4th 1266, 1298.) *Watson* asks whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.)

As the People acknowledge, "there was essentially no evidence linking [minor] to the crime other than through People's Exhibit No. 2" which was erroneously admitted. Accordingly, as the parties agree, it is reasonably probable that a result more favorable to minor would have been reached in the absence of the erroneous admission of People's Exhibit 2. The true findings for the attempted robbery and the violation of probation must therefore be reversed.

Because we conclude that the true findings must be reversed, we do not address minor's other contentions.

## DISPOSITION

The true findings on the attempted robbery and violation of probation are reversed. The matter is remanded to the juvenile court for further proceedings.


PEÑA, J.

I CONCUR:


MEEHAN, J.

**DETJEN, Acting P. J., Dissenting**

The majority concludes that People's Exhibit No. 2 (Exhibit No. 2) was not properly authenticated and was therefore erroneously admitted in the case against M.M. (minor). I respectfully disagree with that conclusion and therefore dissent.

## 1. Authentication

Despite the absence of any *testimony* proffered to show when Exhibit No. 2 was created or whether it was created close in time to People's Exhibit No. 1 (Exhibit No. 1), the two exhibits contain sufficient circumstantial indicia to permit a finding that they were created at or near the same time. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267–268.) Specifically, in both exhibits, (surveillance videos, which we have viewed) the person depicted appears to be wearing the same sweatshirt, pants and shoes; the lighting appears to be the same; the weather appears to be the same (in both videos the ground is wet and the sky is overcast); the same trailer appears to be parked on the opposite corner of the street as the gas station; and two vehicles (one on either side of the street across from the gas station) appear to be parked in the same locations.

While conflicting inferences exist regarding the time of Exhibit No. 2 in relation to Exhibit No. 1, one reasonable inference was that the videos were taken close in time and Exhibit No. 2 was what it purported to be—a video of minor walking to the gas station soon before the attempted robbery. The juvenile court drew that inference. On that record, I would conclude the juvenile court did not abuse its discretion by admitting Exhibit No. 2.

I would therefore reach minor's second and third arguments.

## 2. Suggestive Identification Procedure

Second, minor argues that the identification procedure was unduly suggestive because deputy probation officer Veronica Ruiz was shown People's Exhibit No. 3 (Exhibit No. 3) the still photograph, depicting the face of the person Ruiz identified as

minor, and then shown a video of the attempted robbery,[1] depicting a person who appeared to wear the same clothing as the person depicted in Exhibit No. 3. Minor contends the procedure improperly suggested to Ruiz that Exhibit No. 3 was created just moments before Exhibit No. 1, suggesting that the same person was depicted in both exhibits. I disagree.

"In determining whether a [minor's] right to due process is violated by the admission of identification evidence, [reviewing courts] consider ' "(1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances." ' " (*People v. Clark* (2016) 63 Cal.4th 522, 556.)[2] "A claim that an identification procedure was unduly suggestive raises a mixed question of law and fact to which [reviewing courts] apply a standard of independent review, although [reviewing courts] review the determination of historical facts regarding the procedure under a deferential standard." (*Clark*, at pp. 556–557.)

Ruiz was not a percipient witness to the attempted robbery. This is not a situation in which a percipient witness was shown a photograph of a single suspect and asked whether he or she was the perpetrator. Ruiz was shown a photograph of a person and

---

[1]    The People contend that nothing in the record establishes that the video Ruiz watched was the same video admitted as Exhibit No. 1. While Ruiz was not shown Exhibit No. 1 at trial, her description of the video she watched is consistent with Exhibit No. 1.

[2]    Ordinarily, when evidence that a percipient witness identified a minor is admitted even though a suggestive identification procedure is used, courts consider "such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification" to determine whether the identification is nevertheless reliable. (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.) Those considerations are not applicable when the identification is made by a nonpercipient witness based on a photograph or video (or some combination of the two).

2.

asked if she knew who the person was. She identified minor as the person in the photograph. The following day, she was shown a video from the same location and asked if she recognized the person in the video—whose face was not depicted but who wore the same clothing as the person in the photograph from the day before. At the jurisdictional hearing, Ruiz described that she recognized minor in the video of the attempted robbery (which the parties note was not specifically identified as Exhibit No. 1) based on the similarity of his clothing to the photograph, that he often wore baggy clothing, and the way he walked. There was nothing unduly suggestive about that procedure. Ruiz identified minor in Exhibit No. 3 and opined that the same person appeared in the video she was shown the following day.

Moreover, even if identification of minor in the video depicting the offense resulted from an unduly suggestive procedure, the identification was, nevertheless, reliable under the totality of the circumstances. Ruiz testified that she had seen minor at least four days per week for the prior year. She recognized the style of baggy clothing that he wore in the video, and his distinctive manner of walking. Given the totality of the circumstances, that identification was reliable.

Further, the juvenile court and the victim in this case, Reggie H., both viewed Exhibit Nos. 1, 2, and 3 and each concluded the person depicted in the two videos looked the same. Ruiz and probation officer Julian Badillo testified that minor was the person depicted in Exhibit No. 3. Even without Ruiz's testimony regarding Exhibit No. 1, the trier of fact would have reached the same conclusion in light of the similarity of appearance of the person depicted in People's Exhibit Nos. 1, 2, and 3. Any error was harmless. (*People v. Carter* (2005) 36 Cal.4th 1114, 1164, fn. 23 [an identification tainted by undue influence is harmless if the conviction is supported by other evidence linking the defendant to the offense].)

### 3. Predisposition Custody Credit

Finally, minor contends the juvenile court erred in failing to calculate predisposition custody credit for purposes of minor's maximum term of confinement.

"If the minor is removed from the physical custody of [his or her parent] … as the result of an order of wardship made pursuant to [Welfare and Institutions Code s]ection 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the [maximum] term of imprisonment which could be imposed upon an adult convicted of the offense …." (Welf. & Inst. Code, § 726, subd. (d)(1).)

"In a juvenile delinquency proceeding, 'a minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing. [Citations.] It is the juvenile court's duty to calculate the number of days earned, and the court may not delegate that duty.' " (*In re A.M.* (2014) 225 Cal.App.4th 1075, 1085; see *In re Eric J.* (1979) 25 Cal.3d 522, 536.) " '[W]hen a juvenile court elects to aggregate a minor's period of physical confinement on multiple petitions …, the court must also aggregate the predisposition custody credits attributable to those multiple petitions.' " (*In re A.M.*, at pp. 1085–1086; see Welf. & Inst. Code, § 726, subd. (d)(3).)

Here, minor was not removed from the custody of his parent as a result of an order of wardship. He was sentenced to 211 days in custody with credit for 211 days served. In fact, at the dispositional hearing, the juvenile court indicated minor would be released to the custody of his parent that day. Because no maximum period of confinement was required, no calculation of the total custody credits to be applied against a maximum period of confinement was required. I would therefore decline to remand the matter for recalculation of custody credits to be applied against a maximum period of confinement.

4.

I would further strike the juvenile court's determination of the maximum term of confinement because no such finding was authorized by statute.  (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 541.)

DETJEN, Acting P.J.