Filed 9/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>WILLIAM DAVENPORT,<br><br>    Defendant and Appellant. | A165093<br><br>(Contra Costa County Super. Ct.<br>No. 5000716688) |

      In 2007, appellant William Davenport pleaded no contest to second degree murder with a firearm enhancement for the shooting death of Joe West.  He was sentenced to prison for 18 years to life.  In 2020, Davenport petitioned for resentencing relief pursuant to former section 1170.95 of the Penal Code, now section 1172.6 as recently renumbered.[1]

      This appeal arises from the third denial of Davenport's petition for resentencing, following reversals by this court of two previous denials at the prima facie stage of the proceeding.  At an evidentiary hearing under section 1172.6, subdivision (d)(3), the trial court found beyond a reasonable doubt that Davenport was the actual killer of West and thus is ineligible for resentencing.

      Davenport now contends that, at the evidentiary hearing, the trial court erroneously admitted into evidence the transcript of preliminary

---

      [1] Statutes 2022, chapter 58, section 10.  All further statutory references are to the Penal Code unless otherwise designated.

hearing testimony from Malisa Hardiamon, a witness to the shooting. Hardiamon's testimony was hearsay, he argues, and there was no showing of witness unavailability under Evidence Code section 1291, subdivision (a).

We see no error and shall affirm.

## I. BACKGROUND

### A.

The transcript of Hardiamon's testimony at the October 16, 2007 preliminary hearing in the underlying murder case against Davenport shows as follows.

Hardiamon dated Davenport and had a child with him in 2005. They broke up six or seven months later, but then they got back together. Davenport was a little jealous and "too in love."

On the morning of January 4, 2007, Hardiamon dropped the child off with Davenport and spent the day with Joe West. West was Hardiamon's cousin by marriage. They were not romantically involved.

West was with Hardiamon when she dropped the child off with Davenport. Hardiamon told Davenport that she would be gone for a couple of hours.

Around 11:00 p.m., West drove Hardiamon home to her mother's house. They arrived sometime between midnight and 1:00 a.m. West stopped the car in the parking lot in front of the house. They talked for a couple of minutes before Hardiamon saw someone walking to her right.

Hardiamon recognized the person approaching as Davenport, and said, " 'Oh, shit, my baby daddy.' " Hardiamon hoped that Davenport did not think "anything happened" between her and West.

Davenport opened the car door and said something to Hardiamon. Davenport pulled out a gun. While Davenport held the gun three to four

2

inches in front of Hardiamon's face and pointed it at West, the gun went off more than once. There were no pauses between shots.

After the shooting, Hardiamon got out of the car and called out to Davenport asking him why he did it, but he was already gone. West backed the car up and left.

Hardiamon went inside and woke up her brother and his girlfriend. Hardiamon said that Davenport had just shot someone. They thought she was lying, but she said she saw it happen. Hardiamon went into her mother's room and repeated that Davenport had shot someone.

Davenport called Hardiamon five minutes later. Hardiamon again asked Davenport why he did it. Davenport said it was going to be okay. Davenport told her not to worry and to come with him. Davenport said that he saw West crash and West was dead.

Detective Scott Cook testified that he responded to a report of a suspicious death involved in a car accident a half-mile from Hardiamon's residence. Detective Cook found West slumped over dead in the driver's seat with blood around his chest and mouth. There was blood spatter in front of the driver's seat.

## B.

An information dated October 17, 2007, charged Davenport with murder. (§ 187.) It further alleged personal and intentional discharge of a firearm causing great bodily injury and death as well as personal and intentional discharge and personal use of a firearm (§ 12022.53, subds. (b)–(d)).

On November 30, 2007, Davenport entered a plea to second degree murder and admitted personal use of a firearm within the meaning of section 12022.5, subdivision (a). The court sentenced him to a term of 15

3

years to life for second degree murder consecutive to a term of three years for the enhancement.

In 2019, Davenport filed a petition for resentencing pursuant to former section 1170.95. Davenport alleged that the information allowed the prosecution to proceed under a felony-murder theory or under the natural and probable consequences doctrine; that he pleaded no contest to second degree murder in lieu of going to trial; and that he could not be convicted of murder under current law.

The superior court appointed counsel for Davenport, and then denied the petition for failure to state a prima facie case for relief. On appeal, the Attorney General conceded Davenport had stated a prima facie case for relief. This court vacated the denial order and remanded the matter for further proceedings. (*People v. Davenport* (June 24, 2020, A158211) [nonpub. opn.].)

On remand, the superior court again denied the petition at the prima facie stage, finding that the record of conviction conclusively established Davenport's ineligibility for relief. In doing so, the court relied on Davenport's admission to the firearm enhancement and on the preliminary hearing transcript.

Davenport appealed a second time, and again prevailed. This court held that the superior court erred in considering facts from the preliminary hearing transcript because Davenport did not stipulate to the transcript as a factual basis for his plea. (*People v. Davenport* (2021) 71 Cal.App.5th 476, 481 (*Davenport II*).) As a result, we held, the court engaged in improper fact finding at the prima facie stage of the proceeding. (*Ibid.*)

We reversed and remanded for the issuance of an order to show cause and for an evidentiary hearing. (*Davenport II, supra*, 71 Cal.App.5th at

4

p. 485.) We noted that, at what is now a section 1172.6, subdivision (d) hearing, the prosecution could "rely on the preliminary hearing transcript to sustain its burden of establishing that [Davenport] is not entitled to [section 1172.6] relief." (*Davenport II*, at p. 485, fn. 3.)

On remand, at the start of the evidentiary hearing and by written motion in limine, Davenport moved to exclude the preliminary hearing transcript and all exhibits admitted at the preliminary hearing. The only two witnesses who testified at the preliminary hearing were Hardiamon and Detective Cook. Without their testimony—particularly Hardiamon's, an eyewitness to the shooting—there would have been no evidentiary basis to hold Davenport over for trial.

Davenport argued that the preliminary hearing testimony from Hardiamon and Detective Cook should not be considered because such testimony did not qualify for admission as former testimony under Evidence Code section 1291. He also argued that, by the plain terms of section 1172.6, subdivision (d)(3), testimony from Detective Cook's reporting by hearsay the statement of another officer, Officer Goley, should be excluded because it had been admitted at the preliminary hearing under section 872, subdivision (b).[2]

The prosecution conceded that section 872, subdivision (b), testimony from Detective Cook was inadmissible but asserted that other testimony at the preliminary hearing—specifically Hardiamon's—was admissible, along with stipulated facts and matters of which the court could take judicial notice. The prosecution argued that section 1172.6 authorized the court "to

---

[2] Section 872, subdivision (b), allows a qualified law enforcement officer to testify at a preliminary hearing as to hearsay statements, "[n]otwithstanding section 1200 of the Evidence Code."

consider evidence previously admitted at any prior hearing or trial that is admissible under current law."

The trial court largely denied the in limine motion, but granted it in part. The court stated that it would not consider Detective Cook's hearsay testimony regarding Officer Goley's statement but otherwise impliedly denied the motion to exclude.

The prosecution requested that the court take judicial notice of the court file, review the preliminary hearing transcript, and consider preliminary hearing exhibits 1 through 3; and directed the court to footnote 3 of this court's opinion regarding the admissibility of preliminary hearing testimony. (See *Davenport II*, *supra*, 71 Cal.App.5th at p. 485, fn. 3.)

The prosecution argued it was clear beyond a reasonable doubt that Davenport was the actual killer of West based on Davenport's plea to second degree murder and his admission of the firearm enhancement, taken together with Hardiamon's preliminary hearing testimony.

Relying on Hardiamon's testimony, the court found beyond a reasonable doubt that Davenport was the sole shooter. Specifically, the court determined that while Hardiamon was in the passenger seat of a parked vehicle driven by West, Davenport opened her door, placed a firearm near her face, and fatally shot West.

The court concluded that, based on Davenport's plea to second degree murder and the facts established by a percipient witness's testimony at the preliminary hearing, Davenport was guilty of malice murder in the second degree. And since the evidence established that Davenport was the actual killer of West, it denied resentencing relief.

6

Davenport timely appealed.[3]

## II. DISCUSSION

Davenport contends the superior court erred by admitting Hardiamon's preliminary hearing testimony for its truth at the section 1172.6, section (d)(3) evidentiary hearing and then relying on it to deny him relief.  We disagree.

Under section 1172.6, subdivision (d)(3), "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . However, hearsay evidence . . . admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."

"When interpreting a statute, a court's role 'is to determine the Legislature's intent so as to effectuate the law's purpose.'  [Citation.]  'We begin as always with the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." ' " (*People v. Cody* (2023) 92 Cal.App.5th 87, 101 (*Cody*); see *People v. Lawrence* (2000) 24 Cal.4th 219, 230–231.)  " ' "On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of

---

[3] We granted a request from Davenport asking that we take judicial notice of the reporter's transcript of the 2007 preliminary hearing in the underlying case.

7

statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." ' [Citation.]" (*Cody*, at p. 101.)

Although section 1172.6, subdivision (d)(3) does not contain express language stating that a preliminary hearing transcript is admissible at the evidentiary hearing, a plain reading of the statute compels this conclusion. First, the provision unambiguously provides that a trial court ruling on the merits of a resentencing petition "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony."  (§ 1172.6, subd. (d)(3).)  Second, because of the proviso that the trial court may not consider hearsay testimony that was admitted into evidence at a preliminary hearing under subdivision (b) of section 872, unless some other hearsay exception applies, section 1172.6, subdivision (d)(3) expressly contemplates that preliminary hearing testimony in particular will be considered at an evidentiary hearing.

In effect, what section 1172.6, subdivision (d)(3) does is create a new hearsay exception applicable specifically to merits hearings in section 1172.6 resentencing proceedings.  "Most hearsay exceptions are located in Evidence Code §§ 1220 to 1390.  They exist, however, in other codes as well." (Simons, Cal. Evidence Manual (Dec. 2022) § 2:20.)  Section 872, subdivision (b), is an example.  Section 1172.6, subdivision (d)(3), contains another, broader exception for former testimony given at a preliminary hearing, but carves out an exception for section 872, subdivision (b), testimony.  Thus, as we read section 1172.6, subdivision (d)(3), the rules of evidence apply to hearings held under section 1172.6, subdivision (d); under those rules, hearsay is inadmissible in the absence of an exception; and the pertinent exception here is the clause in section 1172.6, subdivision (d)(3), stating that

"except that the court may consider evidence previously admitted at any prior hearing . . . ."

But what about the additional phrase in section 1172.6, subdivision (d)(3) requiring previously admitted evidence to be "admissible under current law," Davenport asks. To the extent the phrase "is admissible under current law" creates ambiguity, we think the most natural reading of those words is that the basis for admission of testimony *at the hearing or trial in which it was previously admitted must remain a valid basis for admitting the testimony* "under current law." The statute "contemplate[s] that there may be some evidence that was admitted at a former trial that would <u>not</u> be admissible [in such a proceeding] under current law." (*Cody*, *supra*, 92 Cal.App.5th at p. 104 [citing "case-specific" hearsay under *People v. Sanchez* (2016) 63 Cal.4th 665, 686, as an example].) Hardiamon testified competently from her personal knowledge at the preliminary hearing in 2007, and no change in the law would bar her testimony if that hearing were held today.

Davenport would have us read "current law" to mean, simply, "the Evidence Code." This is the premise for his argument that, to be admissible at a section 1172.6 merits hearing, there must be a showing of witness unavailability under Evidence Code section 1291 as a prerequisite to admission. Not only does this proffered interpretation overlook the fact that some statutory hearsay exceptions may be found outside the Evidence Code, but more fundamentally it violates the basic maxim that a " ' "statute must be given a reasonable and common sense interpretation." ' " (*People v. Zambia* (2011) 51 Cal.4th 965, 972.) If, as Davenport claims, section 1172.6, subdivision (d)(3) means that properly admitted former witness testimony must once again be run through the rigorous filter of the rules of evidence—

9

but at a different time, under different circumstances—the exception for previously admitted testimony would be superfluous. So read, we could take a pen and strike out everything in the clause starting with "except that the court may consider" through "current law," and the statute would mean the same thing. Giving the words a reasonable reading, that cannot be right.

To be sure, section 1172.6, subdivision (d)(3) now makes clear that not all evidence that has traditionally been considered to be part of the "record of conviction" (see *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*), as codified and clarified by Senate Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551; Senate Bill 775)),[4] is automatically admissible in section 1172.6 merits hearings. Detective Cook's preliminary hearing testimony as to the statement of Officer Goley is an example. Indeed, the exclusion of Detective Cook's testimony illustrates how the hearsay exception for former testimony given at a preliminary hearing works against the backdrop of the newly tightened rule that the record of conviction may generally be considered at a section 1172.6, subdivision (d)(3) hearing. Detective Cook's testimony is part of the record of conviction, but because it was admitted at the preliminary hearing under Evidence Code section 872, subdivision (b), the trial court correctly ruled it is inadmissible at a resentencing merits hearing under "current law": Section 1172.6, subdivision (d)(3), by its express terms, now bars this specific form of hearsay, while permitting

_____

[4] We deferred ruling on a request from the Attorney General asking that we take judicial notice of the legislative history of Senate Bill 775. We now grant that request.

10

admission of all other forms of previously admitted former witness testimony.[5]

Davenport insists that, if former testimony given at a preliminary hearing is freely admissible at a section 1172.6, subdivision (d) hearing without a showing of witness unavailability, subject only to the carveout for law enforcement officer testimony under section 872, subdivision (b), former testimony admitted on that basis would not be sufficiently reliable for admission as to its truth. According to Davenport, he "did not have an opportunity to cross-examine Hardiamon at his preliminary hearing with a motive and interest similar to what he would have had if she had been produced to testify at the [evidentiary] hearing." In this view, the substantive changes in the law of murder wrought by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) and follow-on legislation have "substantially reshaped, if not turned on their head, what counsel's tactical objectives, motive and interest would have been when cross-examining Hardiamon at the evidentiary hearing . . . ."

---

[5] Another example, and another qualification to the broad admissibility in section 1172.6, subdivision (d)(3) hearings of evidence traditionally considered to be part of the "record of conviction," concerns prior appellate opinions bearing on a section 1172.6 petitioner's conviction or convictions. Prior appellate opinions that are part of a section 1172.6 petitioner's "record of conviction," which were once admissible for whatever weight the court wished to give them at a merits hearing under former section 1170.95—including for their recitations of fact (*Lewis*, *supra*, 11 Cal.5th at p. 972)—may now be considered only for their "procedural history." (Senate Bill 775, Stats. 2021, ch. 551, § 2, codifying and clarifying *Lewis* on this point; see *People v. Clements* (2022) 75 Cal.App.5th 276, 292 ["trial judges should not rely on the factual summaries contained in prior appellate decisions when a [former] section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing"].)

This argument about counsel's "motive and interest" in cross-examining Hardiamon at the preliminary hearing versus at the section 1172.6, subdivision (d) merits hearing does not aid Davenport's cause. If indeed his counsel's approach to cross-examining Hardiamon in 2007 differed from the approach he would have liked to have taken at a section 1172.6, subdivision (d) hearing years later, the remedy was in his hands: Nothing stopped him from subpoenaing Hardiamon to testify if the prior transcript was incomplete or otherwise misleading. And if she was unavailable to testify for some reason, the hearing transcript of her testimony would have been admissible even under the theory he now pursues.

But Davenport has never made any argument—in the trial court, or here—that he now has some basis to explore with Hardiamon whether someone else shot West, or whether her testimony that he shot West was in some respect inaccurate. That highlights the essential weakness of the line of argument he pursues in this appeal. Granted, there have been some seismic changes in the governing law since Hardiamon testified at the preliminary hearing, but the only change *material* to what evidence could be "considered" at his section 1172.6, subdivision (d) hearing was the enactment of a narrow bar on law enforcement officer hearsay at a preliminary hearing under section 872, subdivision (b).

Both sides cite case law that they say supports their respective readings of section 1172.6, subdivision (d)(3). The Attorney General cites *Davenport II*, *supra*, 71 Cal.App.5th at page 485, footnote 3, just as the prosecutor did in the trial court, and here on appeal he adds *People v. Flores* (2022) 76 Cal.App.5th 974, 989, footnote 11, and *People v. Garrison* (2021) 73 Cal.App.5th 735, 747–748. Davenport, for his part, cites *People v.*

*Mitchell* (2022) 81 Cal.App.5th 575. *Davenport II*, *Flores*, and *Garrison* are consistent with the Attorney General's position, and *Mitchell* is consistent with Davenport's position, but none of these cases explicitly addresses the issue presented here. The former testimony exception in section 1172.6, subdivision (d)(3) was squarely at issue in none of them. We do not find the implicit holdings the parties draw from these cases to be particularly illuminating. *Cody*, *supra,* 92 Cal.App.5th 87—which was decided after all briefs in this case were filed—is the only published case on point, and we will follow it.

Finally, Davenport places great emphasis on the legislative history of Senate Bill 775, a 2022 amendment to the language of section 1172.6, subdivision (d)(3) enacted to codify and clarify the holding in *Lewis*, *supra*,11 Cal.5th 952. He claims that a Bill Analysis of Senate Bill 775 in the Assembly Public Safety Committee outlines a possible construction of the text of the bill in accordance with the interpretation he now proposes. (Assem. Com. on Public Safety, Analysis of Sen. Bill 775 (2021–2022 Reg. Sess.), as amended July 6, 2021 (Assembly Committee on Public Safety Bill Analysis, or Senate Bill 775 Analysis).)[6] We think Davenport overreads the

_____

[6] Davenport also relies on an article authored by Judge Richard Couzens, a leading commentator on criminal sentencing matters. (See Couzens, Accomplice Liability for Murder (SB 1437 and 775) (April 2022) <https://www.fdap.org/wp-content/uploads/2022/05/Accomplice-Liability-for-Murder-SB-1437-and-SB-775.pdf> [as of Sept. 27, 2023].) Judge Couzens states that "As originally enacted, section 1170.95 did not fully address the hearing on the merits of the petition. [Former] [s]ection 1170.95, subdivision (d)(3), provided: 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' " (*Id.* at p. 51.) This view appears to be based on a reading of the Senate Bill 775 Assembly Committee on Public Safety Bill Analysis. Citing the Senate Bill 775 Analysis, Judge Couzens states "it appears the

13

legislative history. Indeed, his reliance on the Senate Bill 775 Assembly Committee on Public Safety Bill Analysis illustrates one of the hazards of relying on legislative history as a guide to the meaning statutory language in some circumstances: The Senate Bill 775 Analysis is itself ambiguous.

That document, prepared by Counsel to the Assembly Committee on Public Safety, states as follows: "It is not entirely clear whether" the applicability of the rules of evidence at a section 1172.6, subdivision (d)(3) hearing "means a statement in the record of conviction that is offered to prove the truth of the matter stated would have to fall within an exception to the hearsay rule in order to be admissible at the hearing. This raises a concern that parties would be required to recall witnesses from the trial to testify again at the . . . section [1172.6] evidentiary hearing, even where there is a prior transcript of the trial testimony as part of the record of conviction; this may not be possible in older cases in which witnesses are no longer available." (Senate Bill 775 Analysis, *supra*, at p. 10.) "[A]*ssuming the prosecution must prove witness unavailability*"—which presupposes the answer to the hearsay question posed—the Senate Bill 775 Analysis goes on to state that the proposed bill's "author should consider clarifying this point." (*Id*. at p. 11, italics added.)

We view the above comments as good counseling in the course of the drafting process, offered for all legislators to consider with a view to possible clarifying changes, not an expression of what the draft language meant as then written. In any event, there is a straightforward answer to the hearsay question the Senate Bill 775 Analysis raises. The text of Senate Bill 775 at

amendment to [former] section 1170.95, subdivision (d)(3), limits evidence at the hearing on the merits of the petition to what is admissible according to the traditional rules of evidence." (Couzens, Accomplice Liability for Murder (SB 1437 and 775), *supra*, at p. 52.)

the time the Bill Analysis was prepared, in July 2021, and when the proposed bill was later enacted, sets forth an express hearsay exception for former witness testimony that does not require a showing of witness unavailability.  What is key is that the uncertainty in the text discussed in the Senate Bill 775 Analysis was never clarified.  Thus, given the lack of response to the recommended clarification in the Senate Bill 775 Analysis, we cannot rely on it as an expression of Senate Bill 775's meaning that legislators could have and probably did rely upon in voting to enact.  It simply raises an unresolved drafting issue for the Legislature as a whole to consider as the legislative process moved forward.

Now the issue comes to us, and in our view consideration of " ' "the consequences of a particular interpretation, including its impact on public policy" ' " (Cody, *supra*, 92 Cal.App.5th at p. 101), provides a better aid to statutory interpretation than we may glean from this narrow slice of the legislative history.  "Were we to adopt [Davenport's] interpretation of section 1172.6, it would mean we would have to disregard the statute's plain language.  Further, it would mean that all section 1172.6 evidentiary hearings would effectively become new court trials.  As another appellate court recently stated, that is plainly <u>not</u> what the Legislature intended." (*Cody*, at p. 104, emphasis in original [citing *People v. Clements, supra*, 75 Cal.App.5th at p. 297 for the proposition that "the Legislature did not choose to grant qualifying offenders under section 1172.6 a new trial, but rather the Legislature chose a procedure 'requiring trial judges to decide the critical factual questions based—at least in some cases—on a cold record' "].)

### III. DISPOSITION

Affirmed.

STREETER, J.

15

WE CONCUR:

BROWN, P. J.
HIRAMOTO, J.*

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:  Superior Court of California, County of Contra Costa

Trial Judge:  Hon. Theresa Canepa

Counsel:  Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Amit Kurlekar and Claudia H. Amaral, Deputy Attorneys General for Plaintiff and Respondent.